560 P.2d 876

**Walter J. GUY, Plaintiff-Appellant,**

v.

**Elizabeth GUY, Defendant-Respondent.**

**No. 12112.**

Supreme Court of Idaho.

March 3, 1977.

Samuel Eismann, Coeur d'Alene, for plaintiff-appellant.

James Michael English, Coeur d'Alene, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a judgment by the district court which in turn affirmed a judgment and decree of the magistrate court in a divorce action which distributed

property determined to be community. We affirm the decisions of the lower courts.

In 1964 the plaintiff-appellant Walter Guy, while employed by Litton Industries, became insured under the provisions of a group term disability insurance policy. That policy acquired no cash or loan value and the premiums were paid solely by the employer. During 1971 the insurance carrier was changed, however, the terms remained substantially the same and the employer continued to pay the premiums.

The relationship between appellant and respondent Elizabeth Guy dates to at least 1965 during which they participated in a void marriage ceremony. Thereafter the relationship continued until a valid marriage of October 30, 1970. At that time appellant was approximately 49 years of age and respondent was 28 years of age. On June 30, 1973, appellant was determined to be totally disabled due to advanced arteriosclerosis and other complications. Five days later his employment with Litton was terminated. Under the provisions of the disability insurance policy appellant began to receive payments of $1,313.00 per month in January, 1974. Those payments are reduced by appellant's Social Security benefits ($297.00 per month) and retirement benefits from previous employment ($24.00 per month). So long as his disability exists, those payments will continue until he reaches the age of 65.

Respondent has education and experience skills in the field of biological computer systems and is a laboratory technician. She also is totally disabled due to a hip separation and back problem. She receives monthly disability benefits from Social Security in the amount of $264.00.

Following hearing, a painstaking and well reasoned memorandum decision was rendered by the magistrate court, much of which is the basis for this opinion. Thereafter judgment was rendered and upon appeal to the district court it was affirmed. Although other issues may appear present, we emphasize that the sole error urged upon appeal is the determination that the future benefits to be paid under the terms of the disability insurance policy are community property and the allocation of those net monthly benefits equally between the parties. Hence, while the problem presented is broad in scope and of first impression in this jurisdiction, the issue is narrow and quickly stated.

Our legislative frame of reference is likewise narrow and easily stated. I.C. § 32–903 provides:

"All property of either the husband or the wife owned by him or her before marriage, and that acquired afterward by either by gift, bequest, devise or descent, or that which either he or she shall acquire with the proceeds of his or her separate property, by way of moneys or other property, shall remain his or her sole and separate property."

I.C. § 32–906 provides:

"All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use  *  *  *."

■ Any asset acquired during marriage is rebuttably presumed to be community property and the burden of proof rests with the party asserting a separate property interest. *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976); *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975); *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974); *Houska v. Houska*, 95 Idaho 568, 512 P.2d 1317 (1973), 97 Idaho 316, 543 P.2d 869 (1975).

If these benefits were acquired during the marriage, we must uphold the presumption that they were community property since the record is devoid of any contrary evidence. It is not disputed that they were fringe benefits or emoluments of appellant's employment and therefore they derive from the community labors of the appellant.

A group term disability policy, like a similar life insurance policy, is a unique form of property interest. It has no cash surrender value, no loan value and interest does not accumulate thereon. Here over the course of appellant's employment it actually constituted a series of unilateral contracts, each beginning with the payment of a premium for a specified period (presumably annual) and terminated at the expiration of that annual period.

"Protection for the coming year depends exclusively upon payment of an advanced premium. *The length of time the insure has had the policy and the number of premiums previously paid are irrelevant.* If the term passes without the insured's death, the protection purchased expires without loss. The insured has had the benefit of protection for the year and it has been 'used up.' He must pay another premium to enjoy further protection.

"The risk payment doctrine correctly treats term insurance as a series of unilateral contracts rather than as one bilateral contract * * * [E]ach premium payment is both a condition precedent to and a consideration necessary for the insurance company's promise to pay a benefit upon the death of the insured." Comment, Community and Separate Property Interests in Life Insurance Proceeds: A Fresh Look, 51 Wash.L.Rev. 351, 353, 374 (1976) (emphasis supplied).

Here appellant initially began his employment and the disability insurance policy was initiated prior to the marriage. Nevertheless, during the course of the marriage at the end of each term period a new contract of insurance arose and thus for the nearly three years between the marriage and the determination of disability new policies of term length originated.

This Court has found a community property interest to exist in two similar fringe benefits or emoluments of employment in the form of life insurance and military retirement benefits. *See, Ramsey v. Ramsey, supra; Travelers Ins. Co. v. Johnson,* 97 Idaho 336, 544 P.2d 294 (1975). *See also,*

*In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976); *Smith v. Lewis,* 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589 (1975); *In re Marriage of Fithian,* 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (1974); *Payne v. Payne,* 82 Wash.2d 573, 512 P.2d 736 (1973); *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969). As stated by the court in *Stephen v. Gallion,* 5 Wash.App. 747, 491 P.2d 238 (1971):

"A retirement pension under a noncontributory, employer-financed plan is not a gratuity, but is pay withheld, and constitutes delayed compensation for services rendered. [citations] *Just as the pension benefits do not constitute a gratuity, so also the premiums paid or payable by the employer are not gratuities. They are paid* by the employer *as an essential part of employment based upon the continuing employment of each and every employee covered under the plan during any given monthly period. Although no portion of any given premium passes through the pockets of any given employee, and thus he receives some tax advantage, nevertheless, it does constitute something produced by such employee by his toil or talent. The benefit to the employee is part of the consideration for his services. To that extent, if he is married, it is earned by and belongs to the community.* "For purposes of determining the legal status of policy proceeds, *we see no logical reason to distinguish between an insurance plan which provides for a retirement or pension benefit and one which provides for a death or disability benefit.*" At 240 (emphasis added).

We deem it clear that in the case at bar the disability benefits are to be paid as partial consideration for past employment. It has been held such benefits are community property, not only where the premiums are paid with community funds, but also where the funds are paid by the employer. Cf. *Chase v. Chase,* 74 Wash.2d 253, 444 P.2d 145 (1968); *Mathews v. Mathews,* 414 S.W.2d 703 (Tex.Civ.App.1967), with *Marshall v. Marshall,* 511 S.W.2d 72 (Tex.Civ.

App.1974); *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970).

Appellant argues for adoption of the apparent California approach to disability payments as mandating the conclusion that the disability insurance proceeds in the instant case are separate property. *In re Marriage of Jones*, 13 Cal.3d 457, 119 Cal. Rptr. 108, 531 P.2d 420 (1975); *In re Marriage of Loehr*, 13 Cal.3d 465, 119 Cal.Rptr. 113, 531 P.2d 425 (1975); *In re Marriage of Olhausen*, 48 Cal.App.3d 190, 121 Cal.Rptr. 444 (1975). Both *Jones* and *Loehr* are distinguishable in that there the California court concluded that federal military disability benefits do not *primarily* serve as a form of deferred compensation for a serviceman's past employment. We do not read those cases that *all* disability payments assume that separate property character. Here we reiterate that in the case at bar the disability benefits do not constitute a gratuity, but rather compensation for appellant's labors. *See, McHorse v. Portland General Electric Co.*, 268 Or. 323, 521 P.2d 315 (1974); *Marshall v. Marshall, supra*; *Chase v. Chase, supra*. Further, we think that portion of the analysis of *Jones* dealing with a pain and suffering component is inapplicable since disability insurance benefits derived from employment are designed to compensate for loss of earnings and do not consider or compensate for the pain and suffering. 44 Am.Jur.2d Insurance § 1611, p. 508; *Aetna Life Ins. Co. v. Orr*, 205 Ark. 566, 169 S.W.2d 651 (1943). *See*, Annot., 24 A.L.R.3d 8 (1969).

In the case at bar, the benefits vested during the time of the marriage. Clearly community labor was the source of the benefits. Hence, we continue to look in Idaho to the source of the benefit rather than the purpose of payment analysis rationale of the California court in *Olhausen. See*, Note, In re Marriage of Olhausen: The Characterization of State Disability Retirement Benefits After Dissolution, 3 Pepperdine L.Rev. 205 (1975).

■ Appellant next contends that the disability benefits should be his separate property in that such is analogous to personal injury damages and tort under the authority of *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1974). Appellant's assertion is correct that *Rogers* held that the pain and suffering component of a tort recovery for personal injuries is the separate property of the injured spouse. *Rogers* it will be remembered involved the liability between husband and wife resulting from the tortious act of the husband. Here no portions of these disability proceeds are shown to compensate the pain and suffering aspect of disability. As to loss of earnings, it was held in *Rogers* that the rule was tailored to compensate the injured without rewarding the guilty spouse. In the usual third-party tort situation, however, the rule remains unchanged, i. e., an award for future earnings is community property at least to the extent the award compensates for earnings to be lost during the marriage. *See, Doggett v. Boiler Engineering & Supply Co.*, 93 Idaho 888, 477 P.2d 511 (1970).

Appellant next argues that the "inception of title" doctrine requires the benefits payable herein to be assigned as the separate property of the appellant. He further argues that respondent at best is merely entitled to reimbursement of the value of the community services used as consideration for the premium payments which were made during the marriage. Under that doctrine it is asserted the disability insurance policy was "acquired" after the first premium payment which was made prior to the marriage. We reject the inception of title doctrine as being unrealistic in cases such as that at bar involving term insurance and it has been much criticized for reasons we deem persuasive. *See*, Comment, *supra*, 51 Wash.L.Rev. 351 (1976).

■ The California cases enunciating that doctrine may be explained as a practical accommodation to the rigid rule in that jurisdiction that all community property *must* be equally divided, California Civil Code § 4800. By contrast, in Idaho, our courts have the equitable power and discretion to divide community property toward the end of achieving a just and equitable

result. I.C. § 32–712(1). Here we find no abuse of the lower courts' discretion in dividing the community property of the parties. While the focus of asserted error is solely upon the distribution of the disability insurance benefits, we have examined other aspects of the lower courts' judgment. We find the lower court well considered a complex property situation involving the separate property of each of the parties accumulated before the marriage, property accumulated as community during the marriage and property which was considered as mixed separate and community. The lower courts considered the personal situations and abilities and disabilities of both parties. In the ordinary and normal situation and in the absence of factors which in the discretion of the trial court require otherwise, we would expect community property assets to be divided equally between the parties. The burden of persuading the trial court of the existence of factors to require other than a one-half to each party distribution must be upon the party asserting the need therefor. We find nothing in the record presented here to demonstrate that the appellant so carried that burden of persuasion.

The judgments of the lower courts are affirmed. Costs to respondent.

McFADDEN, C. J., and DONALDSON, BAKES and BISTLINE, JJ., concur.