93 Cal.App.3d 215 (1979)
155 Cal. Rptr. 350
In re the Marriage of JOE E. and DONNA L. MASON.
CROCKER NATIONAL BANK, as Personal Representative, etc., Respondent,
v.
DONNA L. MASON, Appellant.
Docket No. 3345.
Court of Appeals of California, Fifth District.
May 18, 1979.
*218 COUNSEL
Goldberg, Fisher & Randall and Roger D. Randall for Appellant.
Dunn & Anderson, Cassandra Dunn and James G. Bowles for Respondent.
OPINION
ZENOVICH, J.
Respondent Joe E. Mason (husband) filed a petition for dissolution of his marriage with appellant Donna L. Mason (wife) in Kern County Superior Court on February 13, 1976. Wife filed a response and the trial of the dissolution action commenced on September 30, 1976. The trial court announced its notice of intended decision on October 1, 1976. At wife's request, findings of fact and conclusions of law were prepared.
The trial court granted wife a partial new trial or, in the alternative, allowed husband to agree to modify the interlocutory judgment of dissolution of marriage to pay certain attorneys fees and costs and to establish an invention as community property on January 19, 1977. Husband agreed to the modifications and an order was entered denying the motion for a new trial.
Since the filing of this appeal, husband died. Pursuant to the provisions of California Rules of Court, rule 48(a), this court ordered Crocker National Bank to be substituted as the personal representative for respondent in this action.
*219 Wife and husband were married on September 6, 1969, in Ventura, California. At the time of the marriage, husband was 49 years old and wife was 43 years old. Husband was an electrician at the time of the marriage. Wife was a credentialed schoolteacher working in Ventura. Wife quit her job prior to the marriage; after the marriage the parties moved to Bakersfield. She obtained a full-time teaching position with the Kern County High School District in the fall of 1970.
Husband suffered a permanently disabling injury while working on the Diablo Canyon powerhouse project on December 18, 1972, when pipe fell on his back, crushing his spine and breaking his ribs and pelvis. Subsequent to the injury, husband also suffered an aneurism in 1974.
The parties agreed that wife should resign her teaching job at the end of the 1974 school year in order to take care of husband full time. She did this by taking a one-year leave of absence in 1974 and then formally resigning the following year.
In July 1975, the parties received $400,000 net from a judgment as a result of the December 18, 1972, injuries suffered by husband. Husband had previously received an award of approximately $25,000 net from workers' compensation in lieu of a lifetime disability pension.
In December 1975, the parties separated for the first time. At that time, the parties sold the community residence on Coronado Street, Bakersfield, each taking one-half of the proceeds, netting approximately $9,000 plus to each. They also divided equally both the savings and checking accounts which they had held jointly. The wife received $6,600 from the savings and checking accounts at this time.
After the first separation, the parties attempted a reconciliation. The reconciliation was unsuccessful and the parties separated permanently on February 11, 1976. During the brief period of reconciliation, the wife retained as her separate property the $9,000 she received as her equal share of the proceeds from the sale of the community residence on Coronado Street and the $6,600 she received as her share of the joint savings and checking accounts. The husband, on the other hand, devoted his share of the proceeds from the division of the community property to pay for the new residence on Rio Vista.
At the time of trial, the wife had sold her premarital separate property in Ventura for $16,000. She had purchased a lot in Wisconsin for $4,000 *220 and held the remaining $12,000 in her checking account. When the parties permanently separated in February 1976, the wife took the household furnishings leaving the husband with "his hospital bed, his wheelchair, a portable television set, and a few other insignificant items."
The issues in this case involve community property contentions concerning various assets. The facts surrounding these individual assets will be discussed in detail with each issue.
Wife contends the trial court abused its discretion by failing to provide spousal support for her. The awarding of spousal support in a dissolution of marriage action is governed by Civil Code section 4801 which provides in pertinent part:
"(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties:
"(1) The earning capacity and needs of each spouse.
"(2) The obligations and assets, including the separate property, of each.
"(3) The duration of the marriage.
"(4) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.
"(5) The time required for the supported spouse to acquire appropriate education, training, and employment.
"(6) The age and health of the parties.
"(7) The standard of living of the parties.
"(8) Any other factors which it deems just and equitable...." (1) Although it is not unlimited, the trial court has broad discretion in setting spousal support pursuant to Civil Code section 4801. (In re Marriage of Morrison (1978) 20 Cal.3d 437, 454 [143 Cal. Rptr. 139, *221 573 P.2d 41]; see also 2 Markey, Cal. Family Law (1978) Dissolution of Marriage, §§ 21.30-21.32, pp. 21-45  21-51.)
(2) In this case, the trial court found wife "is a lifetime credentialed school teacher and capable of full-time employment and not in need of spousal support," and therefore concluded she was not entitled to spousal support. We concur with the trial court.
The earning capacity of wife as a schoolteacher far exceeded that of husband, who was disabled; while, because of his medical disability, husband's needs were greater. Although husband had significantly greater assets, he depended on these assets to generate his income to meet his expenses. The duration of the marriage was relatively short (approximately six and one-half years). Wife's employment would not interfere with the interests of any dependent children. Wife needed no further education or training, and the court concluded wife had not "exercised due diligence" in seeking employment. Wife was approximately seven years younger than husband and was obviously in better health. Assuming wife would obtain a job, there would be no appreciable change in her standard of living, since husband was making approximately $20,000 per year before his accident and wife would apparently make an adequate income.
In enacting Civil Code section 4801, the Legislature intended "that all supported spouses who were able to do so should seek employment" and that "courts would issue orders encouraging these spouses to seek employment...." (In re Marriage of Morrison, supra, 20 Cal.3d at p. 451.) Although the trial court perhaps could have directed husband to pay spousal support for a brief period while wife looked for employment (recognizing the limited market currently in the teaching profession), the fact that a more liberal award might have been supported is not a proper test. (Newbauer v. Newbauer (1949) 95 Cal. App.2d 36, 40 [212 P.2d 240].) We find no abuse here.
Wife relies almost exclusively on In re Marriage of Lopez (1974) 38 Cal. App.3d 93 [113 Cal. Rptr. 58]. Lopez can be distinguished from the facts of the present case. In Lopez, the husband had a lucrative and growing law practice with a current income of approximately $7,000 per month; the parties enjoyed a "substantial and comfortable lifestyle"; wife had left high school at age 16 and "did some office work prior to the marriage, but had no special job training." After the separation, she maintained the family residence for herself and two minor children. The *222 marriage had a duration of 14 years 3 months. Under these circumstances, the court held an award of spousal support of $200 per month for two years an abuse of discretion. Such abuse does not appear in this case.
(3) The wife now contends that the trust fund is clearly a community asset and should have been equally divided.
Husband placed the bulk of the $400,000 the parties received from the personal injury judgment into a trust fund. The trial court found the trust should be divided pursuant to Civil Code section 4800, subdivision (c), which provides in pertinent part: "[C]ommunity property personal injury damages shall be assigned to the party who suffered the injuries unless the court, after taking into account the economic condition and needs of each party, the time that has elapsed since the recovery of the damages, and all other facts of the case, determines that the interests of justice require another disposition. In such case, the community property personal injury damages shall be assigned to the respective parties in such proportions as the court determines to be just, except that at least one-half of such damages shall be assigned to the party who suffered the injuries.... unless such money or other property has been commingled with other community property." This section "seems to have been designed to assure that personal injury damages are treated like separate property upon dissolution." (2 Markey, Cal. Family Law, supra, § 24.11[2], p. 24-17.)
Wife argues she should be entitled to one-half of the trust fund, notwithstanding the provisions of Civil Code section 4800, subdivision (c), because her name was initially on the trust instrument. Her contention is without merit.
When the judgment proceeds were obtained, they constituted community property. (Civ. Code, § 5110; see 7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 15, p. 5108.) Even accepting wife's contention her name was placed on the trust instrument and could not have been removed unilaterally by husband, this fact would be consistent with the community property nature of the money. Although a husband and wife can contract to change community property to separate property (see 7 Witkin, supra, § 71, p. 5159, and cases cited therein), wife did not offer evidence below to establish that this initial trust instrument constituted the creation of her separate property, nor did she make such an argument in the trial court or on appeal. Thus, wife did not carry the *223 burden of proof required of her under Evidence Code section 500,[1] since this fact would be "essential to the claim for relief" which she was asserting.
The trial court's ability to award personal injury damages to the party who suffered the injury is limited under Civil Code section 4800, subdivision (c), only if "such money or other property has been commingled with other community property." The facts in this case are uncontroverted that the corpus of the trust fund in question came from the personal injury award received for husband's injury and was not commingled with other community property, and therefore the trial court did not commit error in dividing the trust fund by awarding the bulk of the fund to the husband.
(4) Wife further contends that the trial court committed error by failing to credit her with one-half of the value of a 1975 Chrysler automobile purchased by the husband during the marriage.
In September 1975, husband purchased a Chrysler automobile for $7,676. The purchase order with the dealer was signed by both the husband and the wife, and the initial registration with the Department of Motor Vehicles was in both parties' names. The trial court apparently concluded that this vehicle was involved in an agreement between the parties to distribute certain assets of the community property prior to the litigation. There was no evidence at the trial to indicate that this in fact occurred.
The finding of a trial court that property is either separate or community in character will not be disturbed on appeal if supported by substantial evidence. (Beam v. Bank of America (1971) 6 Cal.3d 12, 25 [98 Cal. Rptr. 137, 490 P.2d 257]; see also In re Marriage of Mix (1975) 14 Cal.3d 604, 614 [122 Cal. Rptr. 79, 536 P.2d 479].) However, in this case, the only evidence of an agreement to distribute community property involved the proceeds from the sale of a residence on Coronado Street in Bakersfield and cash in savings and checking accounts.
Rather, the evidence is uncontroverted husband purchased a Chevrolet as a gift for wife a month before purchasing the Chrysler. As a gift *224 purchased with community property or separate funds, this car became wife's separate property. (See, e.g., Logan v. Thorne (1928) 205 Cal. 26, 28 [269 P. 626]; Kaltschmidt v. Weber (1904) 145 Cal. 596, 599 [69 P. 497]; 33 Cal.Jur.3d (1977) Family Law, § 500, p. 63.) Husband testified when he purchased the Chrysler that he intended the Chrysler would be "in my name." However, there is no authority for the proposition that husband could unilaterally decide to hold property as his separate property by making a gift of similar property to his spouse. There is no evidence in the record to infer that wife intended to make a gift of the community interest in the Chrysler to husband, either at the time of purchase or at the time of the initial separation of the parties. Nor is there evidence as to the source of the funds used by husband to purchase the Chrysler.
It also could be argued the Chrysler was not community property, but rather property held between the parties in joint tenancy with the respective interests held as their separate property. The initial registration of the Chrysler listed the names of the parties in the alternative by the use of the word "or." Statutes provide the ownership to be joint tenancy under such registration. (Veh. Code, §§ 4150.5, subd. (a); 5600.5, subd. (a).) While the form of the instrument of title is not conclusive as to the nature of the property (see Gudelj v. Gudelj (1953) 41 Cal.2d 202, 212 [259 P.2d 656]), the presumption created by the instrument cannot be overcome by testimony of the hidden intentions of one of the parties. (Machado v. Machado (1961) 58 Cal.2d 501, 506 [25 Cal. Rptr. 87, 375 P.2d 55]; Gudelj v. Gudelj, supra, 41 Cal.2d at p. 212.)
Although husband would have the ability to "dispose of the title and interest in the vehicle" unilaterally under the provisions of Vehicle Code sections 4150.5 and 5600.5, he should not be allowed to use these provisions to defeat the interest of wife, if it is her separate property, merely by transferring title to the vehicle to his name alone.
In either case, the trial court committed error in finding the Chrysler to be husband's separate property, since the record does not support the court's apparent conclusion it had been the subject of an agreed division by the parties. Therefore, this portion of the judgment should be remanded to the trial court for further proceedings consistent with this court's opinion.
(5) Wife further contends that the trial court erred by failing to credit her with a community property interest in a residence purchased by husband referred to at the trial as the "Rio Vista property." Husband *225 used two sources of funds in making this purchase. First, he used funds received from the personal injury judgment, which were community property but could be treated as his under Civil Code section 4800, subdivision (c), upon dissolution. Second, husband used funds received when a previous residence owned by the parties had been sold. The parties had divided the proceeds from this sale equally.
Therefore, there is substantial evidence to support a conclusion by the trial court that the money received by husband from the sale of the prior residence was his separate property because of the agreement of the parties to divide the property equally. (Civ. Code, § 5103; 2 Markey, Cal. Family Law, supra, § 24.03, p. 24-7; 7 Witkin, Summary of Cal. Law, supra, § 73, p. 5161.) The funds received from the personal injury award, therefore, had not been commingled with other community property and could be awarded to husband upon dissolution pursuant to Civil Code section 4800, subdivision (c).
This would make wife's claim she signed a quitclaim deed under duress irrelevant unless it is determined that husband had made a gift of one-half the value of the property to wife. However, there is no evidence other than wife's testimony that duress was involved in the signing of the quitclaim deed, even though the document was signed before witnesses. It was within the province of the trial court to determine the credibility of wife's testimony. (Evid. Code, § 780.) Therefore, the trial court's distribution of this asset entirely to the husband will be affirmed.
(6) Wife's final contention is that the trial court committed error by failing to resolve the issue of community interest in husband's Kern County Electrical Benefit Pension Fund.
At trial, husband testified he was receiving $314 per month from the Kern County Electrical Benefit Pension Fund as a disability payment. He made payments to the fund for 22 years, 3 of which were when he was married to the wife. Wife contends the trial court committed error by failing to award a portion of this disability payment to her as a community property interest.
Disability pay is not community property except to the extent that such payments are received in lieu of retirement pay; when the employee-spouse elects to receive disability payments in lieu of a matured retirement benefit, only the net amount received over what would have been received as retirement benefits qualifies as disability pay. (See 2 *226 Markey, Cal. Family Law, supra, § 24.24[2], p. 24-26, and cases cited therein.)
In this case, the information concerning the pension elicited on cross-examination by wife's counsel did not establish that husband was entitled to a retirement pension from the fund at that time, or what the amount of such a retirement pension would be if he were entitled to one. These were facts the wife needed to establish in order to establish a right to a portion of the disability payments. (See Evid. Code, § 500.) Thus, the trial court did not have the needed evidence to make such a determination and wife's contention is without merit.[2]
The judgment is reversed insofar as it determined that the Chrysler automobile was the husband's separate property, and in all other respects the judgment is affirmed.
Brown (G.A.), P.J., and Franson, J., concurred.
A petition for a rehearing was denied June 12, 1979.
NOTES
[1] Evidence Code section 500 reads as follows: "Party who has the burden of proof. Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."
[2] The trial court stated incorrect grounds for failing to divide this pension payment. First, it found the parties had agreed to divide up certain property, including their respective retirement funds. However, the evidence only reflects an intent to divide the proceeds from the sale of the Coronado Street residence and certain checking and savings accounts. Second, the court indicated the amount actually paid into the fund during the marriage needed to be shown. The best way of apportioning such a pension is establishing that percentage of the total years the pension was earned reflected by the years the parties were married. In this case, since husband contributed to the fund 22 years and was married to wife 3 of those years, 3/22 of the pension would be community property, and one-half of that would be credited to wife. (See 2 Markey, Cal. Family Law, supra, § 24.24[8], p. 24-34, and cases cited therein.) This information was obtained by wife's cross-examination of husband. The amount actually paid into the fund during the three years of marriage is not necessary.