*In re* MARRIAGE OF BARBARA SMITH, Petitioner-Appellant, and DONALD C. SMITH, Respondent-Appellee.

Third District   No. 79-459

Opinion filed June 3, 1980.

John F. Cirricione, of Cirricione, Block, Krockey & Cernugel, P. C., of Joliet, for appellant.

Harry C. McSteen, of McSteen, Phelan & Egan, P. C., of Joliet, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Petitioner, Barbara Smith, filed a petition for legal separation, amended by interlineation to a petition for dissolution of marriage, in the circuit court of Will County against the respondent, Donald C. Smith. After a hearing on the matters of distribution of property and appropriateness of maintenance, the trial court affirmed its previous judgment for dissolution of marriage, distributed various properties and awarded maintenance in gross as hereinafter set forth. Petitioner perfected this appeal from the property distribution and maintenance provisions of the decree.

The Smiths were married on June 29, 1950, in Manistee, Michigan, and have two children, both of whom are emancipated but continue to reside with their mother. Petitioner, a graduate of Purdue University, was employed as a teacher and by two major oil companies during the first four years of the marriage. Respondent was employed as a pilot for United Airlines in 1952, and the couple, after several earlier relocations, purchased a home in Plainfield, Illinois, in 1954.

In February 1969, the Smiths opened a liquor store in Plainfield. Petitioner was active in the operation of the business until October 1974 and clerked, kept books, and, along with respondent, did janitorial work. Other than her work in conjunction with the liquor store and as a part-time income-tax preparer, petitioner has remained unemployed since 1954.

In October 1974 the parties separated and petitioner continued to occupy the Plainfield residence with the then minor children. Complaints for divorce and separate maintenance were filed by the parties but dismissed for want of equity.

In January 1976 respondent suffered a heart attack and was subsequently retired by United Airlines as being totally disabled to pilot an aircraft. Respondent receives a disability pension of $2,367 and social security payment of $436 per month. The liquor store is currently operating at a loss, and the income from a rental property is not referenced in the record.

On appeal, petitioner contends the trial court erred in finding respondent's disability pension and loss-of-license insurance are not marital property, and that its division of life insurance policies, award of maintenance in gross, and overall division of marital property are against the manifest weight of the evidence.

■ We first consider whether the respondent's disability pension constitutes marital property. The relevant statutory authority is section

503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503) which defines the concept as follows:

"(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) the increase in value of property acquired before the marriage; and

(6) property acquired before the marriage.

(b) All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section."

It can thus be seen that all property acquired after marriage and before dissolution of marriage is marital property, unless it falls into a category excepted by the statute. As the subject disability pension does not expressly fall into an excepted category, it constitutes marital property if it can be characterized as property acquired during the marriage.

The question of whether a disability pension is marital property has not previously been passed upon by the courts of this State. The related question of whether a longevity pension is property was addressed by the court in *In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289. In that case, the husband was retired from the military and receiving retirement benefits after a marriage spanning 217 months of the husband's 240 months of service in the military. After reviewing the decisional law of other jurisdictions, the court held that 217/240 of the benefits were marital property as "an earned property right which accrues by reason of the individual's years of military service." *In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 709, 388 N.E.2d 1289, 1291.

Subsequent Illinois decisions have similarly found pension benefits to be marital property. *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511, involved a civilian pension and profit-sharing plan. In that

case, the husband was not retired nor receiving benefits but was apparently eligible to receive benefits from the noncontributory plans at retirement. After a decisional review, the court concluded:

> "* * * The cases discussed above convince us that such a contractual pension or profit-sharing interest, whether matured, vested or nonvested, contributory or noncontributory, is a chose in action (*People ex rel. Vancil Motor Co. v. Weaver* (1942), 313 Ill. App. 317, 40 N.E.2d 83) and *'property'* (see 30 Ill. L. & P., *Property*, §3 (1957)) under section 503 of the Illinois Marriage and Dissolution of Marriage Act. Therefore, any part of such pension or profit-sharing interest earned, that is, 'acquired', during marriage is marital property." *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 662, 397 N.E.2d 511, 518.

*In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868, involved a police pension. The husband in that case had worked in a police force throughout the marriage and was eligible to retire and draw pension benefits in less than four years. The husband raised no argument concerning the vesting of benefits, and the court concluded the future benefits were marital property as "part of the consideration earned by the employed spouse for his service." 79 Ill. App. 3d 835, 840, 398 N.E.2d 868, 871.

*In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 403 N.E.2d 1337, involved a contributory pension which the husband was not receiving and which had not vested. While that case held a valuation of the pension rights was necessary and remanded the cause for that purpose, it adopted the *Hunt* rationale concerning the unvested nature of the pension in so doing.

Thus it is clear that the Illinois courts have consistently found pension plan benefits to be marital property.

Turning now to the first question at bar, we consider the decisions of other jurisdictions as entitled to respect (*cf. Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293), initially noting those decisions concerning disability benefits which have been found to be community or divisible property.

*Busby v. Busby* (Tex. 1970), 457 S.W.2d 551, involved military disability retirement benefits. The husband in that case began to receive the benefits after the parties were divorced and contended that disability benefits should be distinguished from vested voluntary retirement benefits, which were considered community property under previous Texas decisions. The court held that its analysis of the two types of military benefits dictated the conclusion that the disability payments should similarly be classified as community property. A private employment disability retirement pension based in part on length of

employment was similarly considered community property in *Copeland v. Copeland* (Tex. Civ. App. 1976), 544 S.W.2d 183.

*Guy v. Guy* (1977), 98 Idaho 205, 560 P.2d 876, involved noncontributory private employment disability benefits, stemming from a group term disability insurance policy, which the husband was receiving. The court considered community labor to be the source of the benefits, which it stated were "designed to compensate for loss of earnings" (98 Idaho 205, 208, 560 P.2d 876, 879) and "paid as partial consideration for past employment" (98 Idaho 205, 207, 560 P.2d 876, 878) and concluded the benefits were community property.

Other community property jurisdictions holding various disability benefits to be community property include Arizona (*Flowers v. Flowers* (1978), 118 Ariz. 577, 578 P.2d 1006) and Louisiana (*Succession of Scott* (1956), 231 La. 381, 91 So. 2d 574).

Disability benefits have similarly been characterized as divisible property in a noncommunity property jurisdiction.

*Kruger v. Kruger* (1976), 139 N.J. Super. 413, 354 A.2d 340, involved both military retirement and disability benefits which the husband was receiving. The court stated both benefits, to which the husband was irrevocably entitled to receive for life, were assets subject to equitable distribution to the extent the entitlements were based upon military service during the marriage. It further stated the obligation to remit the fraction of each periodic payment awarded to the wife would terminate upon her death, acknowledging this treatment gave the benefits the hybrid attributes of both income and distributive property. The court remanded the matter with instructions to also consider the tax ramifications of the payments by distributing only the net benefits. The judgment was modified and affirmed in *Kruger v. Kruger* (1977), 73 N.J. 464, 375 A.2d 659. The Supreme Court of New Jersey found the wife's interest would not cease upon her death, and the full amount of the monthly retirement pay should be considered property acquired during the marriage, although the term of service could be compared to the term of the marriage in determining the equitableness of apportionment. Following this discussion, the court said of the disability benefits:

> "As previously noted, Mr. Kruger is also the recipient of disability benefits of $106 per month. Though not subject to federal income tax deductions, there is no reason why these benefits should be treated any differently from the pension. The claim that disability benefits offset current wages lost because of diminished earning capacity assumes a factual basis that does not exist. There is no proof that the dollar work ability of the pensioner has been reduced to that extent and the amount of military disability benefit does not appear to be so related. 10 *U.S.C.* sec. 1201 and sec. 1401

(1975). Furthermore, there does not appear to be any reason to justify a difference between receipt of these payments from a lump sum award, including damages for permanent injury, arising out of a negligence action, *Di Tolvo v. Di Tolvo*, 131 *N.J. Super.* 72, (App. Div. 1974), which is properly classifiable as property subject to equitable distribution, irrespective of the reason for the payment. By this standard the disability benefits are in the same category as the retirement pay.[1]" 73 N.J. 464, 472, 375 A.2d 659, 663-64.

---

[1] Community property states hold that disability pay is community property subject to division. *In re Marriage of Stenquist*, 133 *Cal. Rptr.* 341, 342 (Ct. App. 1976); *Dominey v. Dominey*, 481 S.W.2d 473, 475-476 (Tex.Ct.Civ.App. 1972), *cert. den.* 409 *U.S.* 1028, 93 S.Ct. 462, 34 L.Ed.2d 321 (1972); *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex. Sup. Ct. 1970).

While the above footnoted cases represent the general view of the Texas courts regarding disability benefits, *In re Marriage of Stenquist* (1976), 62 Cal. App. 3d 849, 133 Cal. Rptr. 341, provides an interesting point of divergence into consideration of those jurisdictions where disability benefits have not been found to be community property. That case involved a military disability pension which the husband was receiving after retiring with 26 years of military service. At the time of retirement, he had the option of receiving retirement benefits at the rate of 65 percent of his basic pay or disability benefits at the rate of 75 percent of his basic pay. Assuming the husband desired the greater benefit, the Army began making disability payments to him.

The Supreme Court of California affirmed that part of the decision holding a portion of the benefits to be community property in *In re Marriage of Stenquist* (1978), 21 Cal. 3d 779, 582 P.2d 96, 148 Cal. Rptr. 9. The courts stated that portion of the benefits attributable to service rendered during marriage and which the husband would have received as retirement benefit were community property, as it could not "permit the serviceman's election of a 'disability' pension to defeat the community interest in his right to a pension based on longevity." (*In re Marriage of Stenquist* (1978), 21 Cal. 3d 779, 786, 582 P.2d 96, 100, 148 Cal. Rptr. 9, 13.) The wife had argued that the court should adopt the "clear and simple rule" that all disability payments, the right to which was earned during coverture, are community property. The court specifically rejected this suggestion. *In re Marriage of Stenquist* (1978), 21 Cal. 3d 779, 785 n.4, 582 P.2d 96, 100 n.4, 148 Cal. Rptr. 9, 12 n.4.

The rejection of that suggestion maintained the California position on disability payments as stated in *In re Marriage of Jones* (1975), 13 Cal. 3d 457, 531 P.2d 420, 119 Cal. Rptr. 108, and its companion memorandum decision, *In re Marriage of Loehr* (1975), 13 Cal. 3d 465, 531 P.2d 425, 119 Cal. Rptr. 113, that a serviceman's right to disability benefits does not

comprise a community asset and thus does not become subject to division upon dissolution of marriage. While a premise of the holding, that no vested right to benefits based on longevity exists, is no longer valid in light of the court's holding in *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 664, that vested and nonvested pension rights should be treated alike, the court's reasoning merits examination:

"Disability pay, however, does not serve primarily as a form of deferred compensation for past services. Although longevity of service plays a role, the veteran's right to disability payments, and the amount of the payments, depend primarily on the existence and extent of the disability. Such payments serve to compensate the disabled veteran for the loss of military pay caused by his premature retirement and for his diminished ability to compete for civilian employment. (See Note (1973) 27 JAG J. 392, 400.) So long as the marriage subsists, the veteran's reduced earnings works a loss to the community. But such community loss does not continue after dissolution; at that point the earnings or accumulations of each party are the separate property of such party. (Civ.Code, sec. 5119.) Then any diminution in earning capacity becomes the separate loss of the disabled spouse.

Disability payments serve a second purpose. We have suggested *supra* that they compensate the veteran for the pain, suffering, disfigurement and the misfortune caused by his disability. Pain, suffering, disfigurement or the loss of a limb, as here, is the peculiar anguish of the person who suffers it; it can never be wholly shared even by a loving spouse and surely not after the dissolution of a marriage by a departed one." (*In re Marriage of Jones* (1975), 13 Cal. 3d 457, 462, 531 P.2d 420, 423-24, 119 Cal. Rptr. 108, 111-12.) The court went on to compare disability pay to personal injury compensation, the separate property of the injured individual in California, when received after dissolution (*In re Marriage of Pinto* (1972), 28 Cal. App. 3d 86, 104 Cal. Rptr. 371, cited in *In re Marriage of Jones* (1975), 13 Cal. 3d 457, 463, 531 P.2d 420, 425, 119 Cal. Rptr. 108, 113) and possibly in Illinois (*cf. Chicago, Burlington & Quincy R.R. Co. v. Dunn* (1869), 52 Ill. 260), at least under prior law. While the Illinois courts have not yet been called upon to decide whether a personal injury cause of action is marital property, the proceeds of a personal injury settlement acquired during marriage have been so characterized. *In re Marriage of Gan* (1980), 83 Ill. App. 3d 265, 404 N.E.2d 306.

Two recent decisions illustrate the application of these principles. *In re Marriage of Mason* (1979), 93 Cal. App. 3d 215, 155 Cal. Rptr. 350, involved contributory disability benefits being received by the husband

where the wife did not establish that the husband was entitled to a retirement pension. The court stated:

"Disability pay is not community property except to the extent that such payments are received in lieu of retirement pay; when the employee-spouse elects to receive disability payments in lieu of a matured retirement benefit, only the net amount received over what would have been received as retirement benefits qualifies as disability pay. (See 2 Markey, Cal. Family Law, *supra*, sec. 24.24 [2], p. 24-26, and cases cited therein.)" (*In re Marriage of Mason*, (1979), 93 Cal. App. 3d 215, 225-26, 155 Cal. Rptr. 350, 356.)

*In re Marriage of Webb* (1979), 94 Cal. App. 3d 335, 156 Cal. Rptr. 334, involved disability benefits being received by the husband but which would modify in amount to that of a retirement pension upon reaching the minimum retirement age and length of service. The wife acknowledged the disability payments were currently separate property but contended that status would change when the benefits corresponded to those for longevity retirement. The court agreed:

"Because Webb's retirement benefits will be recalculated to parallel those received by officers who earn service retirement, it appears that the predominant function of those benefits after age 50 is to provide for support as if Webb had retired for service, and not to continue to compensate him for loss of earnings resulting from compelled premature retirement and diminished ability to compete in the employment market.

Consequently, as 'it would be unjust to deprive wife of a valuable property right simply because a misleading label has been affixed to husband's pension fund benefits' (*Stenquist*, 21 Cal. 3d at pp. 786-787, 148 Cal. Rptr. at p. 14, 582 P.2d at p. 101), it appears that the trial court erred in finding that Webb's pension remains separate property after he reaches age 50." *In re Marriage of Webb* (1979), 94 Cal. App. 3d 335, 342-43, 156 Cal. Rptr. 334, 339.

The California distinction regarding longevity versus disability benefits is reflected in the statute-oriented decision of *Ramsey v. Ramsey* (Tex. Civ. App. 1971), 474 S.W.2d 939. That case involved service-connected disability benefits from the Veterans' Administration which the husband was receiving. Distinguishing *Busby v. Busby* (Tex. 1970), 457 S.W.2d 551, on the basis that the benefits in that case "were accumulated as the result of joint efforts of the spouses" (*Ramsey v. Ramsey* (Tex. Civ. App. 1971), 474 S.W.2d 939, 941), the court held the benefits were not an earned property right acquired by years of service but for personal injury or disease, noting such are separate property by statute in Texas. Similar benefits have also been considered separate property (*In re Marriage of*

*Butler* (Tex. Civ. App. 1976), 543 S.W.2d 147), while those arising from "contract right" rather than as "recovery for personal injuries" are considered community property. *Simmons v. Simmons* (Tex. Civ. App. 1978), 568 S.W.2d 169, 171.

We conclude our discussion of the precedents in other jurisdictions by noting the intermediate position of *In re Marriage of Kittleson* (1978), 21 Wash. App. 344, 585 P.2d 167. The husband in that case had been receiving disability benefits since 1971 and the trial court characterized the benefits as community property. Noting that the various approaches to these benefits have been influenced by the underlying statutes (see *In re Marriage of Kittleson* (1978), 21 Wash. App. 344, ___, 585 P.2d 167, 169-71, citing Wash. Rev. Code §26.09.080, Tex. Fam. Code §5.01, and Cal. Civ. Code §5126), the court refused to promulgate an absolute rule as it noted both separate and community property were distributable in Washington. The court commented:

> "An inflexible rule that required a disability pension to be classified as separate property would ignore the fact that some 'disability' pensions step into the place of a regular retirement pension and permit an earlier retirement and/or retirement with increased payments, others contain elements in the award attributable to an earned regular retirement pension along with elements which compensate for physical injury, and yet other awards are made for disability alone. * * * Further, we hold that it would be unwise by our pronouncement of an absolute rule to preclude an award to the other spouse in the future from a 'disability' pension when the extreme situation arises that would find one spouse able to look to a more than adequate disability pension while the other would be left destitute." *In re Marriage of Kittleson* (1978), 21 Wash. App. 344, ___, 585 P.2d 167, 173.

■■ Underlying the various characterizations of disability benefits present in the above decisions is the fact that these benefits encompass elements of longevity pensions as well as elements of compensation for the loss of earning power and physical impairment occasioned by the underlying disability. We recognize the analytical contribution of those courts distinguishing disability benefits on the basis of some form of the compensatory element, but do not believe the framework of statutory law in Illinois offers us the flexibility of that approach. Section 503(a) of the Illinois Marriage and Dissolution Act (hereinafter the Act) mandates the characterization of all nonexcepted property as marital property and, as previously mentioned, longevity pensions constitute marital property in Illinois. The disability pension at bar differs from such longevity pension only in its compensatory element, its mode of inception and possibly its duration. Given the classificatory directive of section 503(a),

we hold the disability benefits at bar to similarly constitute marital property.

■ We next consider whether respondent's loss-of-license insurance constitutes marital property. Although the record is not entirely clear on this point, the insurance was apparently obtained through respondent's union and provided a series of monthly payments to compensate respondent for the loss of his pilot's license. Respondent contends the insurance reimburses him for the loss of a personal right and is thus his nonmarital property. While respondent may be correct in his characterization of the nature of the insurance proceeds, these benefits, as the disability benefits, are not excepted by section 503(a) of the Act. For the reasons set forth in our discussion of the disability payment concerning our statutory directive, we hold the loss-of-license insurance to be marital property.

Having found respondent's disability benefits and loss-of-license insurance to be marital property, our attention is directed to petitioner's three remaining assignments of error. Petitioner contends the trial court erred in awarding respondent ownership of certain life insurance policies while awarding her half of their cash surrender value, in its award of maintenance of $1,300 per month for a period of 60 months, and in its overall division of marital property. While our review of these issues would be inappropriate as this cause must be remanded for further proceedings in the trial court, we deem it advisable to consider one issue which petitioner may reassert on remand.

Petitioner contends the trial court erred in its division of certain life insurance policies, as those policies on the life of respondent contain a waiver-of-premium clause which forgives premium payments as long as respondent remains disabled. Petitioner contends the waiver-of-premium benefit is an item of marital property in addition to the underlying insurance policy. In spite of this characterization, petitioner also contends this makes those policies on respondent's life "more valuable" than the cash surrender value forming the basis of her interest in the life insurance.

■ Regardless of which characterization is accepted, the respective economic value of the policies remains the ultimate consideration, and therefore we do not reach the question of whether a component of that value is marital property independent in nature from the property to which it relates. While there is little question the trial court considered the matter of respective value in awarding the policies as it did, we direct the court to again consider both the prepaid premiums on the policies as well as the approximately $17,000 which the petitioner has borrowed against this insurance. In so directing, we in no fashion constrain the trial court in making an award it finds equitable in light of its overall division of marital property.

■■ As we have found the disability benefits and loss-of-license insurance at bar to be marital property, we remand this cause to the trial court with directions to reconsider its division of the marital property in just proportions. The court should again consider those factors enumerated in section 503(a) of the Act and is in no way constrained to award any specific marital property, or percentage thereof, to either party. In making this division, the court should receive any relevant evidence with respect to the amount of Federal and State income taxes having an effect on the parties. (See *Kruger v. Kruger* (1977), 73 N.J. 464, 472, 375 A.2d 659, 663; *Kruger v. Kruger* (1976), 139 N.J. Super. 413, 417, 354 A.2d 340, 343.) The trial court is further directed to reconsider its award of attorney's fees as well as its award of maintenance, considering those factors enumerated in section 504 of the Act in light of its distribution of marital property in just proportions.

Accordingly, the judgment of the circuit court of Will County is reversed and this cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

SCOTT and STENGEL, JJ., concur.