634 P.2d 1271

**Aurora L. HUGHES, Petitioner-Appellee and Cross-Appellant,**

v.

**Warren HUGHES, Respondent-Appellant and Cross-Appellee.**

**No. 13297.**

Supreme Court of New Mexico.

Oct. 19, 1981.

720

Lorenzo A. Chavez, Martin J. Chavez, Albuquerque, for petitioner-appellee and cross-appellant.

Louis J. Vener, Albuquerque, for respondent-appellant and cross-appellee.

## OPINION

FEDERICI, Justice.

This is an appeal from the District Court of Bernalillo County. The suit was for divorce and property settlement. Appellant (Husband) appeals and appellee (Wife)

cross-appeals the issues involved in the property settlement.

The trial court found that Husband's future disability benefits are partially community property; Wife did not unduly influence Husband to transfer ownership in the family residence to joint tenancy; Husband intended the family residence become community property at the time the joint tenancy deed to the residence was executed; Wife was entitled to receive the entire community portion of Husband's future disability benefits; and Husband was entitled to half the community interest in Wife's future retirement benefits even though Wife had withdrawn a portion of her contribution to the retirement fund during the marriage.

We affirm the trial court in part and reverse and remand in part.

The issues on appeal are:

I. Whether Husband's future Federal Civil Service disability benefits are community property;

II. Whether Wife unduly influenced Husband to transfer the family residence from Husband's separate property to joint tenancy in Husband and Wife;

III. Whether ownership in the residence at issue was transmuted as to become community property;

IV. Whether the trial court was in error in allocating the community property.

The pertinent facts show that Husband was a federal employee for eighteen years and four months. During this period he made contributions to the Civil Service Retirement and Disability Fund pursuant to 5 U.S.C. § 8334 (1970 & Supp. III 1973).

The parties were married in January 1964. Husband was granted permanent disability by the Civil Service Commission in 1973. Husband was a federal employee at the time he married Wife. Judgment for divorce was entered on June 18, 1980.

The residence of the parties was acquired by Husband as an inheritance from his mother. In 1977, Husband executed a deed which transferred the residence to himself and Wife as joint tenants.

The record shows that there was much discord between the parties during the period of their marriage.

I. Whether Husband's future Federal Civil Service disability benefits are community property.

Husband argues that the Federal Civil Service disability benefits which he receives are his separate property. He claims that these disability benefits are different from strictly retirement benefits in that they are analogous to a personal injury recovery or a workmen's compensation recovery. He points out that in New Mexico personal injury recoveries and recoveries under workmen's compensation are treated as separate property because they are in lieu of wages and the divorced spouse can have no interest in the future wages of the other spouse. Husband also argues that his disability benefits are separate property because his right to receive those benefits vested five years after he began making contributions to the retirement fund, and before his marriage to Wife.

Wife argues that the disability benefits received by Husband should be considered community property, at least to the extent community funds were contributed to the Retirement and Disability Fund.

While the issue of whether disability benefits are community property has never been before an appellate court in New Mexico, the issue has been addressed in other jurisdictions. Various rationales have been employed depending on the type of disability benefits involved. Military disability benefits have been held to be separate property because they are compensation for personal injury rather than an earned property right. *Ramsey v. Ramsey*, 474 S.W.2d 939 (Tex.Civ.App.1971). Where the disability benefits have been earned either through community labor or through monetary contributions of the community, the benefits have been held to be community property. *Guy v. Guy*, 98 Idaho 205, 560 P.2d 876 (1977).

The case of *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969), is cited by Wife. It should be noted that following *McCarty*

*v. McCarty*, —— U.S. ——, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), cases such as *LeClert* are overruled to the extent they hold that United States military retirement pay is community property. *Espinda v. Espinda*, 96 N.M. 712, 634 P.2d 1264 (1981).

The implications of *McCarty* for the case at bar are limited in that *McCarty* appears to be a narrow holding. The effect of *McCarty* is restricted to Congressional intent as expressed in federal statutes. Although the Court in *McCarty* did hold that Congress intended to preempt the field as to the treatment of United States military retirement pay as either separate or community property, it is clear that where no such Congressional intent is found, there is no federal preemption. *See, e. g., Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1944). Indeed, dicta in *McCarty* shows that other federal benefits are to be treated as community property to the extent Congress has indicated they should be. Specifically mentioned in *McCarty* are Federal Civil Service retirement benefits and Foreign Service retirement benefits, with regard to which Justice Blackmun stated:

> Indeed, Congress recently enacted legislation that requires that Civil Service retirement benefits be paid to an ex-spouse to the extent provided for in "the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation." Pub.L. 95–366, § 1(a), 92 Stat. 600, 5 U.S.C. § 8345(j)(1) (1976 ed., Supp.III). In an even more extreme recent step, Congress amended the Foreign Service retirement legislation to provide that, as a matter of federal law, an ex-spouse is entitled to a pro rata share of Foreign Service retirement benefits. Thus, the Civil Service amendments require the United States to recognize the community property division of Civil Service retirement benefits by a state court, while the Foreign Service amendments establish a limited federal community property concept.

*Id.* —— U.S. at ——, 101 S.Ct. at 2740.

The case at bar involves Federal Civil Service disability benefits. There is no in-

dication that Congress intended that the federal benefits involved in this case be treated as separate property. If there is to be any change in philosophy and result in military retirement benefits as compared to Federal Civil Service disability benefits, the change must be made by the United States Congress. In the absence of such Congressional Act or intent, an analysis of applicable case law becomes necessary.

*Guy v. Guy, supra,* is of particular interest. Although *Guy* did not involve Federal Civil Service disability benefits, it is analogous to the case at bar to the extent it holds that the portion of an ex-spouse's disability benefits earned during coverture are community property.

▮▮ Here, the record shows that a portion of Husband's disability benefits were earned during coverture. Husband became entitled to disability benefits because he contributed to the retirement and disability fund. This case involves an asset acquired during coverture where the presumption is that the asset is community property. Section 40–3–12(A), N.M.S.A.1978. The presumption is overcome only if the method of acquisition shows, by a preponderance of the evidence, that the asset is separate property. *Thaxton v. Thaxton*, 75 N.M. 450, 405 P.2d 932 (1965). In this case, we see that the right to Federal Civil Service disability benefits was acquired through community financial contribution as well as by Husband's labor, which represented community labor when exercised during coverture. We hold that the trial court was correct in its determination that to the extent the community contributed, Husband's Federal Civil Service disability benefits are community property.

Husband claims that his right to receive disability benefits vested before his marriage to Wife, and therefore, his disability benefits are his separate property. This claim is without merit.

▮ In New Mexico, time of vesting has not been considered significant in the analysis of whether retirement benefits are separate or community property. In the analo-

gous case of *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978), the court differentiated between the terms "vested" and "matured," holding that retirement benefits earned by a state employee were divisible as community property upon dissolution of marriage. The Court in *Copeland* reasoned that the right to receive the retirement benefits had "vested" at the time of the divorce even though the right to receive the benefits had not yet "matured." The significance of *Copeland* for this case is that the Court was willing to divide the husband's future retirement benefits at the time of the divorce even though the right to receive them had not yet actually vested completely. The possibility existed in *Copeland* that the husband would never actually receive his full retirement benefits, yet the Court included those benefits among the community assets divisible upon dissolution of marriage. The conclusion in *Copeland* is consistent with the rule stated above that the community share in the future retirement and disability benefits of a spouse depends upon contributions made by the community during coverture. Husband's claim that he had a vested right to receive disability benefits at the time he married Wife does not deprive Wife of her community interest acquired during the marriage. We hold that Wife's interest in Husband's future Federal Civil Service disability benefits is based on contributions made by the community during coverture which is in no way related to when Husband's right to the disability benefits vested.

II. Whether Wife unduly influenced Husband to transfer the family residence from Husband's separate property to joint tenancy in Husband and Wife.

In New Mexico, transactions between husbands and wives are governed by Section 40–2–2, N.M.S.A.1978, which provides:

Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other.

■ A claim of undue influence within a confidential relationship appeals to the conscience of the court of equity. The general rule as to what constitutes undue influence within a confidential relationship in New Mexico was stated in *Trigg v. Trigg*, 37 N.M. 296, 302, 22 P.2d 119, 123 (1933), as "a moral, social, or domestic force exerted upon [a party] so as to control the free action of his will." The standard set forth in *Trigg* provides the general parameters for the court of equity.

■ The analysis begins with the presumption of undue influence when plaintiff establishes: (1) a certain kind of relationship between parties giving rise to the presumption, such as the relationship between husband and wife; (2) one party is benefited at the expense of the other. *See Walters v. Walters*, 26 N.M. 22, 188 P. 1105 (1920). Although there is a presumption of undue influence in certain types of confidential relationships such as that between husband and wife, most courts consider the circumstances of each particular case. *See, e. g., Cardenas v. Ortiz*, 29 N.M. 633, 226 P. 418 (1924). The analysis which employs a presumption of undue influence on the one hand, and consideration of particular circumstances on the other, is consistent with the "bursting bubble" theory of presumptions. The "bursting bubble" theory is simply that "[t]he trial judge need only determine that the evidence introduced in rebuttal [of the presumption] is sufficient to support a finding contrary to the presumed fact." McCormick on Evidence § 345 at 821 (2d ed. 1972) (footnote omitted). The presumption of undue influence in a confidential relationship will be applied unless it is determined that defendant's evidence presented in rebuttal is sufficient to overcome the presumption. *See Walters v. Walters, supra* (defendant failed to present any evidence to rebut the presumption). If the parties present conflicting evidence, the court of equity will consider the circumstances of the case in arriving at a determination. *See Curtis v. Curtis*, 56 N.M. 695, 248 P.2d 683 (1952).

In the case at bar, Husband has shown that the parties were married and that Wife benefited. The evidence presented by Wife to rebut Husband's prima facie case consists of the testimony of the attorney who assisted the parties in preparing the deed in issue, and Wife's testimony as to why the residence was placed in joint tenancy.

The testimony of the attorney was that Husband appeared to be of sound mind when he signed the deed. If this were the only evidence presented by Wife to rebut the presumption of undue influence, it would not be sufficient. Husband's mental competence is not at issue on appeal. What is at issue is whether Husband acted sufficiently of his own free will when he created the joint tenancy.

Wife's testimony was that Husband executed the new deed because he "wanted to be sure to protect his family," as the parties believed that Husband's brother would inherit the house if Husband died before the residence was placed in joint ownership. Although Wife's evidence is lean, it is adequate to rebut the presumption of undue influence. As the evidence is conflicting, this Court will now consider the circumstances of this case.

The record shows that in 1977, Husband executed a deed which served to place the family residence in joint tenancy between Husband and Wife. The Husband had acquired the house in 1968, following probate of his mother's estate. The house had been purchased by Husband's mother before her death. Husband's three brothers and sisters agreed with Husband to convey their interest in the house to Husband after Husband paid each one a thousand dollars. These payments were made with Husband's funds received by way of inheritance from his mother. The agreement was pursuant to his mother's wishes that the house remain Husband's separate property. Husband acquired the house subject to a mortgage of some thirteen thousand dollars. Monthly payments were made on the home for about three years from community funds. The house was paid for in full in 1971 with funds later received by Husband from his mother's estate.

Husband bases his claim of undue influence on his alleged vulnerable mental and physical state at the time he executed the deed, and on Wife's alleged aggressive temperament as contrasted to his more timid character. Husband claims his wife constantly pressured him to make the transfer at a time when he was dependent on the use of tranquilizers and alcohol, and at a time when he was suffering from assorted maladies related to his disability. His disability is due to peptic ulcers which necessitated removal of part of Husband's stomach.

Wife admits that she was very interested in having the house placed in joint tenancy. She claims that she wanted the house transferred to joint tenancy because it was only right that Husband and Wife share their property in case something should happen to Husband.

Undue influence classically involves a situation where a victim's loss is directly related to the trust that the victim had in the wrongdoer. See D.B. Dobbs, Remedies § 10.3 (1973). While the case at bar is a close one, it is not clear that Wife is a wrongdoer or that Husband completely trusted Wife. It was certainly a legitimate concern of Wife that she have an interest in the home, particularly in the light of Husband's poor health. The preoccupation with joint ownership does not make Wife a wrongdoer. In the light of the evidence presented as to how poorly Husband and Wife got along during their marriage, it cannot be inferred that there was a complete trusting relationship between them. When Husband decided to change the deed, he did so despite the poor relationship he had with Wife. While it might be inferred that Husband's will finally succumbed to Wife's pressure at a time when Husband was mentally and physically vulnerable, it might also be inferred that Husband came to realize that his health was fragile and it was time he did something regarding his Wife's future well-being in case he should die.

In view of the particular facts of this case, we hold that there was substantial

evidence to support the trial court's conclusion that Husband was not unduly influenced at the time he executed the joint tenancy deed in issue.

III.   Whether ownership in the residence at issue was transmuted as to become community property.

The trial court found that since Husband intended to give part of the residence at issue to Wife, the residence was transmuted from separate to community property. There is no substantial evidence in the record to support this finding.

The relevant statute is Section 47–1–16, N.M.S.A.1978, which states:

An instrument conveying or transferring title to real or personal property to two or more persons as joint tenants, to two or more persons and to the survivors of them and the heirs and assigns of the survivor, or to two or more persons with right of survivorship, shall be prima facie evidence that such property is held in joint tenancy . . . .

A joint tenancy deed creates a presumption that a joint tenancy is created unless there is evidence showing the contrary. Here, the record shows that the residence at issue was acquired as separate property, but there is nothing in the record to indicate that its present ownership is other than by joint tenancy. The record shows that the parties were concerned with what would happen to Wife "if something would happen" to Husband. This evidence shows that the intent of Husband in executing the joint tenancy deed was to create a right of survivorship.

Although a joint tenancy can be destroyed by agreement of the parties upon dissolution of marriage, this is an event different from dividing community property. We hold that the residence at issue is held by the parties in joint tenancy.

IV.   Whether the trial court was in error in allocating the community property.

The trial court awarded the entire community interest in Husband's future disability benefits to Wife. This was error. There is no substantial evidence in the record to support the determination made by the trial court. The proper award to Wife is one-half of the community property.

In his brief, Husband claims that he contributed to the retirement and disability fund for eighteen years and four months and that he was married to Wife for eleven years and one month of that period. This is inconsistent with the finding of the trial court that the parties were married in January 1964 and that Husband became permanently disabled in 1973, when community contributions to the retirement fund ceased. The calculation of the community share by the trial court was based on an eleven year, one month period of community contribution. The trial court's calculations must be based on the actual period of community contributions.

The trial court also found that the community interest in Wife's retirement benefits, when she gets them, to be sixty percent, and that Husband's interest was one-half of that, or thirty percent. This is incorrect. The record shows that Wife left her job and withdrew her retirement contribution at one point of her career, while married to Husband, and spent them for community purposes. This sum has never been redeposited to the fund. Wife returned to work for the same employer after a number of years and is presently so employed. The trial court incorrectly included in the Wife's future annuity, those years for which she had previously withdrawn her contributions to the fund. Even if Wife should replace the amount withdrawn at some time in the future as permitted by her retirement plan, this would not be accomplished with funds of the community and Husband would have no interest therein.

The trial court is affirmed on Points I and II and reversed on Points III and IV. On all other matters raised in this appeal, the trial court is affirmed. The case is remanded to the trial court for proceedings consistent with this opinion.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE, J., concur.