[S.F. No. 23161. In Bank. Feb. 7, 1975.]

In re the Marriage of SUMIKO and HERSCHEL RALPH JONES.
SUMIKO JONES, Appellant, v.
HERSCHEL RALPH JONES, Respondent.

458

**COUNSEL**

Dewar, Romig & Anton and Roderick L. Dewar for Appellant.

Meheen & Poyner, M. Michael Meheen and John F. Menken for Respondent.

## OPINION

**TOBRINER, J.**—On this appeal, we hold that a married serviceman's right to disability pay, unlike a vested right to retirement pay, does not comprise a community asset and thus does not become subject to division upon dissolution of the marriage. Such disability pay is not a form of deferred compensation for past services. Rather, it serves to compensate the veteran for the personal anguish caused by the permanent disability as well as for the loss of earnings resulting from his compelled premature military retirement and from diminished ability to compete in the civilian job market. These losses and disabilities fall upon the disabled spouse, not on the uninjured and healthy one; hence, upon dissolution of marriage, the right of the disabled spouse to future disability payment should be his separate property.

Respondent Herschel Jones entered military service in 1957. He married petitioner Sumiko Jones in 1964. In 1969, Herschel lost a leg in combat in Vietnam, and was retired for disability, with monthly disability pay of $379.12. When Sumiko filed suit for dissolution of the marriage in 1972, she claimed her husband's right to lifetime disability payments as a community asset. The superior court rejected that claim, ruling that payments received after dissolution would be the separate property of the husband. Since we agree with the superior court that Herschel's right to disability payments subsequent to dissolution is not a community asset, we affirm the judgment.

Herschel's disability payments derive from the military retirement program enacted in title 10 of the United States Code. Section 1201 of that title provides that the secretary of the military branch concerned may retire a permanently disabled serviceman, with right to "retired pay," if either (a) he has served at least 20 years, (b) his disability rates at 30 percent or higher, and he has served at least 8 years, or (c) his disability rates at 30 percent or higher and was incurred on active duty, or in the line of duty during wartime.[1] Permanently disabled servicemen whose length of service and degree of disability do not entitle them to retired pay receive disability severance pay. (10 U.S.C. § 1212.)

---

[1]Section 1201 provides that "Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty . . . for a period of more than 30 days, is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also determines that—

"(1) based upon accepted medical principles, the disability is of a permanent nature;

Section 1401 permits the veteran to elect between two alternative means of computing his "retired pay."[2] He can compute his pay on the basis of longevity, receiving 2½ percent of his monthly basic pay for each year of service. We shall refer to "retired pay," computed in this manner, as "retirement pay" as that term is used in *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]. Alternatively, the veteran can compute his pay on the basis of disability, by multiplying his monthly basic pay by the rated percentage of disability. We shall refer to retired pay, computed on the basis of disability, as "disability pay." Under either alternative, retired pay is limited to 75 percent of monthly basic pay. (10 U.S.C. § 1401.)[3]

**(1a)** In the present case, Herschel, having served for only 12 years, had no vested right to a pension by reason of longevity of service; he

"(2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and

"(3) either—

"(A) the member has at least 20 years of service computed under section 1208 of this title; or

"(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination; and either—

"(i) the member has at least eight years of service computed under section 1208 of this title;

"(ii) the disability is the proximate result of performing active duty; or

"(iii) the disability was incurred in line of duty in time of war or national emergency."

[2]Section 1401 states in pertinent part:

"The monthly retired pay of a person entitled thereto under this subtitle is computed according to the following table. For each case covered by a section of this title named in the column headed 'For sections', retired pay is computed by taking, in order, the steps prescribed opposite it in columns 1, 2, 3, and 4 . . . . However, if a person would otherwise be entitled to retired pay computed under more than one pay formula of this table or of any other provision of law, he is entitled to be paid under the applicable formula that is most favorable to him. Section references are to sections of this title.

| Formula No. | For sections | Column 1<br>Take | Column 2<br>Multiply by | Column 3<br>Add | Column 4<br>Subtract |
|---|---|---|---|---|---|
| 1 | 1201-1204 | Monthly basic pay of grade to which member is entitled under section 1372 or to which he was entitled on day before retirement or placement on temporary disability retired list, whichever is higher. | As member elects—(1) 2½% of years of service credited to him under section 1208; or (2) the percentage of disability on date when retired. | | Excess over 75% of pay upon which computation is based." |

[3]A disabled veteran may also be entitled to a Veteran's Administration pension or other benefits pursuant to part II of title 38 of the United States Code.

receives a pension only because of his disability. In resolving the instant case, therefore, we do not decide whether, or to what extent, a disability pension granted *after* the serviceman has earned by longevity of service a vested right to retirement pay may constitute a community asset; we limit our decision to holding only that a serviceman's right to disability pay, acquired *before* such a serviceman has earned by longevity of service a vested right to retirement pay, is not a community asset.[4]

█ Congress, of course, may determine the community or separate character of a federally created benefit, and such determination binds the states. (*Free* v. *Bland* (1962) 369 U.S. 663, 668 [8 L.Ed.2d 180, 184, 82 S.Ct. 1089]; *Wissner* v. *Wissner* (1950) 338 U.S. 655, 660-661 [94 L.Ed. 424, 429-430, 70 S.Ct. 398].) █ We find nothing in the statutes providing military disability pay, however, or in the history of the enactment and administration of those statutes, to suggest that Congress intended itself to determine whether the right of a married veteran, resident in a community property state, to disability pay is a community asset. We may therefore define the nature of the treatment to be accorded this benefit according to principles of California community property law so long as the result does not frustrate the objectives of the federal legislation. (*In re Marriage of Fithian, supra,* 10 Cal.3d 592, 597 & fn. 4.)

█ We have recently reaffirmed the principle that under California community property law vested retirement benefits, attributable to employment during marriage, constitute a community asset subject to division upon dissolution. (*Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]; *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765].) The principle rests upon the belief that retirement benefits are not gratuities but deferred consideration for past services rendered by the employee. (*Waite* v. *Waite, supra,* 6 Cal.3d at p. 471.) Application of this principle of community property law compelled our conclusion in *In re Marriage of Fithian, supra,* 10 Cal.3d 592, 604, that military retirement benefits are divisible as community property.

---

[4]Sumiko relies upon decisions of the Texas courts holding that, under Texas community property law, a veteran's right to disability pay is a community asset. (*Busby* v. *Busby* (Tex. 1970) 457 S.W.2d 551, 553-554; *Dominey* v. *Dominey* (Tex.Civ.App. 1972) 481 S.W.2d 473, 475-476; but cf. *Ramsey* v. *Ramsey* (Tex.Civ.App. 1971) 474 S.W.2d 939 (Veterans' Administration pension held separate property).) In both *Busby* and *Dominey,* however, the veteran receiving disability pay had completed 20 years of service and thus acquired a *vested* right to retirement pay (see 10 U.S.C. §§ 1201, 1401), which right, a community asset, he waived in return for a disability pension.

██ Disability pay, however, does not serve primarily as a form of deferred compensation for past services. Although longevity of service plays a role, the veteran's right to disability payments, and the amount of the payments, depend primarily on the existence and extent of the disability. Such payments serve to compensate the disabled veteran for the loss of military pay caused by his premature retirement and for his diminished ability to compete for civilian employment. (See Note (1973) 27 JAG J. 392, 400.) So long as the marriage subsists, the veteran's reduced earnings works a loss to the community. But such community loss does not continue after dissolution; at that point the earnings or accumulations of each party are the separate property of such party. (Civ. Code, § 5119.) Then any diminution in earning capacity becomes the separate loss of the disabled spouse.

Disability payments serve a second purpose. We have suggested *supra* that they compensate the veteran for the pain, suffering, disfigurement and the misfortune caused by his disability. Pain, suffering, disfigurement or the loss of a limb, as here, is the peculiar anguish of the person who suffers it; it can never be wholly shared even by a loving spouse and surely not after the dissolution of a marriage by a departed one.

Disability pay, consequently, compares to compensation for personal injury rather than to retirement pay.[5] The right of an injured spouse to such compensation, under California law, is not a community asset, and thus not subject to division upon dissolution of the marriage. Although compensation actually recovered during the marriage is community property (*Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 320-321 [202 P.2d 73,

---

[5] *In re Marriage of Fithian, supra,* 10 Cal.3d 592, the serviceman, arguing that military retirement pay was separate property, pointed out that a disabled serviceman can waive retirement pay in favor of a Veteran's Administration pension. (See 38 U.S.C. § 3105.) He then contended that Veteran's Administration pensions were separate property—because some federal cases had referred to such pensions as gratuities—and accordingly that retirement pay should also be classed as separate property. We responded that "While it would indeed be inconsistent with community property law to allow the husband to transmute community property into his own separate property, pensions are not considered gratuities under California law and are classed as community property for precisely the same reasons that retirement benefits are community property." (10 Cal.3d at p. 602.)

Interpreting the quoted language as declaring that Veteran's Administration pensions are a community asset, Sumiko argues by analogy that a retired serviceman's right to disability pay should be classed as a community asset. *Fithian,* however, held only that a vested retirement pension based upon longevity of service is a community asset; the classification of disability pensions, whether pursuant to title 10 or under Veteran's Administration programs, was not an issue before the *Fithian* court. Upon confronting that issue in the present case, we have concluded that such pensions, payable to a serviceman who has not acquired a vested right to retirement pay on a longevity basis, do not constitute a community asset.

6 A.L.R.2d 461]), we held in *Washington* v. *Washington* (1956) 47 Cal.2d 249 [302 P.2d 569] that a cause of action for personal injuries which had not been reduced to judgment at the date of divorce became the separate property of the injured spouse.

Civil Code section 5126 extends the holding of *Washington* to cases in which the claim has been reduced to judgment or settlement; the section states that "All money or other property received by a married person in satisfaction of a judgment for damages for personal injuries or pursuant to an agreement for the settlement or compromise of a claim for such damages is the separate property of the injured person if such money or other property is received . . . (3) After the rendition of an interlocutory. decree of dissolution of a marriage." ■ Thus California, after years of vacillation caused by the effect of the community property law upon the doctrine of imputed contributory negligence,[6] has evolved a simple rule: personal injury damages received during marriage are community property, but amounts received after dissolution are the separate property of the injured spouse. (See *In re Marriage of Pinto* (1972) 28 Cal.App.3d 86, 89 [104 Cal.Rptr. 371]; Walzer, Cal. Marital Termination Settlements (Cont. Ed. Bar 1971) p. 61; Attorney's Guide to Family Law Practice (Cont. Ed. Bar (2d ed.) 1972) pp. 247-248.)

■ The basis for this rule was explained by Justice Traynor in *Washington* v. *Washington, supra,* 47 Cal.2d 249. In language fully applicable to the disability benefits at issue here, he explained that although a rule classifying personal injury damages as community property "may be justified when it appears that the marriage will continue, it loses its force when the marriage is dissolved after the cause of action accrues. In such a case not only may the personal elements of damages such as past pain and suffering be reasonably treated as belonging to the injured. party, but the damages for future pain and

---

[6]In *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 321-322 [202 P.2d 73, 6 A.L.R.2d 461], the court held that a wife's cause of action for personal injuries arising during the marriage is community property, and consequently barred by the contributory negligence of her husband. To overcome the injustice arising from the imputation of contributory negligence between husband and wife, the Legislature in 1957 enacted Civil Code section 163.5, which provided that all personal injuries damages were the separate property of the injured spouse. This rule, in turn, proved unsatisfactory (see 8 Cal. Law Revision Com. Rep. (1966) pp. 427-433), and in 1968 the Legislature amended section 163.5 to restore the community property status of personal injury damages recovered during the marriage and enacted section 169.3 to provide that damages received after dissolution are the separate property of the injured spouse. This time the Legislature met the problem of imputed contributory negligence head on, enacting Civil Code section 164.6 to bar imputation of contributory negligence between husband and wife. Sections 163.5, 164.4, and 169.3 were reenacted, as Civil Code sections 5109, 5112, and 5126 respectively, in the 1969 Family Law Act (Civ. Code, § 4000 et seq.).

suffering, future expenses, and future loss of earnings are clearly attributable to him as a single person following the divorce. Moreover, as in any other case involving future earnings or other after acquired property, the wife's right, if any, to future support may be protected by an award of alimony." (47 Cal.2d 249, 253-254.)

The reasoning of *Washington* compels the conclusion that military disability payments received after dissolution of a marriage should also be classified as the separate property of the disabled veteran. Although both *Washington* and Civil Code section 5126 speak of personal injury "damages," the principle underlying those authorities does not turn upon the tortious origin of the right to compensation but upon its allocation in the category of either community or separate property.[7]

Since disability pay serves primarily to compensate the disabled serviceman for current suffering and lost earning capacity, we conclude that only such payments as are received during the marriage constitute a community asset. The veteran's right to payments subsequent to dissolution is his separate and personal right.

The judgment is affirmed.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Burke, J.*, concurred.

---

[7]In arguing that section 5126 is limited to damages for tortious injury, petitioner relies on *Northwestern R. Co.* v. *Industrial Acc. Com.* (1920) 184 Cal. 484, 486 [194 P. 31] and *Estate of Simoni* (1963) 220 Cal.App.2d 339, 344 [33 Cal.Rptr. 845], which held that workmen's compensation disability benefits were community property. Both cases, however, dealt with benefits received during the marriage. No decisions have determined whether an employee's right to future workmen's compensation benefits constitutes a community asset subject to division upon dissolution of the marriage.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.