[Civ. No. 22301. Fourth Dist., Div. One. Dec. 23, 1980.]

SHAROLYN ANN RUCHTI, Plaintiff and Appellant, v. JEROME D. GOLDFEIN, Defendant and Respondent.

COUNSEL

Turney & Turney and Margaret V. Turney for Plaintiff and Appellant.

Feinberg, Zybelman & Paluso, Michael J. Feinberg and George V. Paluso for Defendant and Respondent.

OPINION

**COLOGNE, Acting P. J.**—Sharolyn Ann Ruchti brought this action in April 1979, against Ronald Clarence Ruchti, her former husband, for determination of her community property interest in, and partition of, the military retirement benefits deriving from Ronald's Navy career, and in the second and third causes of action against Jerome D. Goldfein and Thomas D. Kelly, her attorneys in the divorce action for negligence in failing to have the interest determined earlier. Goldfein demurred to

the second and third causes of action on the ground the action is barred by the statute of limitations. The demurrer was sustained without leave to amend.

Accepting as true all of the allegations of the complaint, we make the following recitation of the facts: Sharolyn and Ronald were married on July 7, 1962, and separated on January 15, 1973. Sharolyn hired Goldfein and later hired Kelly to represent her in her action for dissolution of marriage. The action was filed and the court issued an interlocutory decree of dissolution on August 2, 1974. The final decree of dissolution was entered August 12, 1974. Neither the interlocutory nor the final judgment of dissolution contained any reference to military retirement benefits.[1] In Sharolyn's April 5, 1979, action she alleges her entitlement to an award of at least a one-fourth interest in Ronald's pension accruing during the 11 1/2-year marriage.

The developing law relative to the community property character of military pensions has been a matter of considerable concern to the courts as well as the profession (see *In re Marriage of Smethurst* (1980) 102 Cal.App.3d 494, 496 [162 Cal.Rptr. 300]). In 1941, the right to receive a nonvested[2] military pension was held to be a mere "expectancy which is not subject to division as community property" (*French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366]).

In January 1974, about eight months before the entry of judgment in Ruchti, the California Supreme Court restated the law in this area most succinctly, stating: "The law is settled in California that retirement benefits which flow from the employment relationship, *to the extent they have vested*, [fn. omitted] are community property subject to equal division between the spouses in the event the marriage is dissolved. [Citations.] .... Furthermore, the principle that retirement benefits are community property has been held to apply whether the

---

[1] It appears Ronald entered the United States Navy in August 1961, before their marriage, and thus had not served the 20 years necessary for vesting of the military retirement pension as of the time the dissolution became final. By the time this action was filed, April 5, 1979, Ronald's right in the pension had vested, according to Sharolyn. As of September 25, 1980, Ronald was still in the service. This information was not found in the pleadings at issue but is presented in an undisputed manner by the parties and is a proper item of concern in this opinion.

[2] "Vested" refers to a "pension right which survives the discharge or voluntary termination of the employee" (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]).

source of the retirement fund lies in a state, federal, military, or private employment relationship. [Citations.]" (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, at p. 596 [111 Cal.Rptr. 369, 517 P.2d 449]; italics added.) The court's understanding of the distinction between vested and nonvested pensions was underscored by footnote 2 which states: "The right to retirement benefits 'vests' when an employee acquires an irrevocable interest in a fund created by his own contributions and/or the contributions of his employer. The 'vesting' of retirement benefits must be distinguished from the 'maturing' of those benefits, which occurs only after the conditions precedent to the payment of benefits have taken place or are within the control of the employee. [Citations.] [¶] Husband does not contend his rights to the retirement fund had not vested during the marriage." (*Ibid.*)

There is no doubt the courts intended to assign community property character only to the case of a *vested* pension. The pleadings indicate here, and the parties do not dispute, Ruchti's pension rights were not vested at the time of the dissolution judgment since he had not completed the necessary time in the Navy. Had his duty been terminated or had he left the Navy voluntarily, he would have received nothing. The law was clear in 1974 that Sharolyn had no right in the pension; nor did the attorney have any reason to appeal the judgment. Since Sharolyn then had no legal right to a division of the pension, she had no legal right to sue her attorney for not dividing it.

 In January 1976, *In re Marriage of Brown, supra,* 15 Cal.3d 838, the California Supreme Court presented us a case dealing with *nonvested* rights and it altered the state of the law making both vested and nonvested pensions subject to community property claim. *Brown* overruled not only *French v. French, supra,* 17 Cal.2d 775, but also expressly disapproved statements to the effect nonvested pension rights are not community property that were contained in such cases as *In re Marriage of Fithian, supra,* 10 Cal.3d 592 (Jan. 1974), *Smith v. Lewis,* 13 Cal.3d 349 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231] (Jan. 1975), and *In re Marriage of Jones,* 13 Cal.3d 457 [119 Cal.Rptr. 108, 531 P.2d 420] (Feb. 1975) (15 Cal.3d 838, 851, fn. 14). *Brown* made it clear, however, there would be only limited retroactive application of its holding. "[T]he resolution of this issue of prospective application turns primarily on two factors: 'the extent of the public reliance upon the former rule, ...[and] the ability of litigants to foresee the coming change in the law.' In the present case both factors militate against a purely prospective overruling of *French v. French*. It is unlike-

ly that a layman would rely upon the *French* rule, or even know of that doctrine; attorneys familiar with the decision in *French* v. *French* would also realize from our opinion in *Marriage of Wilson, supra,* 10 Cal.3d 851 that the *French* rule was ripe for reconsideration. The unjust distribution of property engendered by the *French* rule should not be perpetuated by denial of *any* retrospective effect to our decision.

"· · · · · · · ·. · · · · · · ·

"We conclude that our decision today should not apply retroactively to permit a nonemployee spouse to assert an interest in nonvested pension rights when the property rights of the marriage have already been adjudicated by a decree of dissolution or separation which has become final as to such adjudication,[3] unless the decree expressly reserved jurisdiction to divide such pension rights at a later date (see Civ. Code, § 4800). Our decision will apply retroactively, however, to any case in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights." (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 850, 851.)

Thus, even after *Brown,* Sharolyn had no right in the military pension since, as she concedes, it was nonvested at the date of the judgment of dissolution (Aug. 1974) from which no appeal was taken (see *Shaver* v. *Shaver* (1980) 107 Cal.App.3d 788, 793-794 [165 Cal.Rptr. 672]). It follows under the limited retroactivity rule of *Brown* that since the Ruchtis' property was presently divided and there was no appeal or reservation of jurisdiction to divide property later, the decree became a final and conclusive adjudication of the parties' property rights (see fn. 3, below). We note, too, Sharolyn admits in her supplemental brief *Shaver, supra,* effectively ends any cause of action against her former husband.

█ Sne asserts, however, this does not end the cause of action against her attorneys in the dissolution proceeding and, relying on *Smith* v. *Lewis, supra,* 13 Cal.3d 349, asserts the attorney should have

---

[3]Concerning its reference to "adjudication" here, the court instructs in a footnote as follows: "An interlocutory decree which does not expressly reserve jurisdiction to divide property at a later date (see Civ. Code, § 4800), but instead renders a present division of property, if not challenged by appeal becomes a final and conclusive adjudication of the property rights of the parties. [Citation.]" (15 Cal.3d 838, 851, fn. 13.)

been aware of the direction the court was moving and was negligent in not so advising her. "[W]e believe an attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem. In the instant case, ample evidence was introduced to support a jury finding that defendant failed to perform such adequate research into the question of the community character of retirement benefits and thus was unable to exercise the informed judgment to which his client was entitled." (*Smith* v. *Lewis, supra,* 13 Cal.3d 349, 359.)

We do not believe any attorney should be held to have foreseen the 180° shift in the law in this area.[4] However, even if we were to concede for the purpose of argument that (1) had the trial attorney appealed this case, the Supreme Court would have made "In re Marriage of Ruchti" the precedent rather than *In re Marriage of Brown, supra,* 15 Cal.3d 838, and Sharolyn would have received the benefits Gloria Brown obtained; (2) the attorney had a duty to anticipate the direction of the developing law; and (3) the attorney breached the duty by failing to adequately research and advise his client of the "uncertain" nature of this law, Sharolyn's cause of action arose when the attorney's negligence terminated her rights in the pension benefits, i.e., when the judgment was entered, or at least when the attorney allowed the judgment to become final. At that point, any possibility of acquiring an interest in the pension was terminated. That is real damage. This damage occurred more than four years before the filing of this action and the action is, therefore, barred by the statute of limitations.

Section 340.6 of the Code of Civil Procedure reads: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services *shall be com-*

---

[4]In *In re Marriage of Brown, supra,* 15 Cal.3d 838, at page 850, the court notes this issue was mentioned in *In re Marriage of Wilson,* (Mar. 1974) 10 Cal.3d 851 [112 Cal.Rptr. 405, 519 P.2d 165], and the issue was "ripe for reconsideration." We are not prepared to say "ripe for reconsideration" is the equivalent of "substantial uncertainty" referred to in *Smith* v. *Lewis, supra,* 13 Cal.3d 349, at page 357 which, incidentally, dealt with a state benefit that was fully matured and a federal benefit that was vested. The uncertainty in *Smith* v. *Lewis* had to do with whether the federal military pension could be divided as community property without violating the supremacy clause of the United States Constitution, an arguable question upon which reasonable lawyers could differ (*Smith* v. *Lewis, supra,* at p. 357; see *Henn* v. *Henn* (1980) 26 Cal.3d 323, 328 [161 Cal.Rptr. 502, 605 P.2d 10]). Here the law had been announced in *French* and *Brown* provided a reversal of the stated rules. We refuse to hold such clairvoyance by the attorney is required.

*menced within* one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or *four years from the date of the wrongful* act or *omission*, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury...." (Italics added.)

It is not necessary that the pension rights be matured, i.e., there be an unconditional right to immediate payment, before there is damage due to the rights being lost (see *In re Marriage of Brown, supra*, 15 Cal.3d 838, 848). The rights could be lost by such occurrences as transfer, waiver, adjudication or, as Sharolyn asserts here, the failure to timely claim them (see *Lewis* v. *Superior Court* (1978) 77 Cal.App.3d 844, 852-853 [144 Cal.Rptr. 1]). Here these nonvested rights were effectively lost when the judgment became final. Sharolyn alleges, and we agree, her rights against Ruchti in the pension were terminated by the judgment rendered under the law then applicable to nonvested pension rights. Her right to that expectancy as to him, if any there could be, was concluded by that judgment insofar as there was concerned a non-vested pension right which was outside the retroactive scope of *In re Marriage of Brown, supra*, 15 Cal.3d 838. If the attorney erred, he did so by the act or omission of allowing that judgment to be entered or failing to appeal the judgment and Sharolyn should have brought her action within four years of the date that judgment became final.

Had the pension been *vested*, so that Sharolyn had a community property interest under the then applicable law, she would have retained her interest as a tenant in common, the interest would not have been lost and she would have suffered no damage as of the date of the dissolution judgment (see *Henn* v. *Henn, supra*, 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10]; and see *Lewis* v. *Superior Court, supra*, 77 Cal.App.3d 844, 852). The tolling provision of Code of Civil Procedure section 340.6, subdivision (a)(1), could then apply (see *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 194 [98 Cal.Rptr. 837, 491 P.2d 421]; *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]). Here, however, Sharolyn had no tenancy in common interest because the pension right was nonvested and that fact was determined in August 1974. If she had a claim against the attorney for losing that right, she was required to bring her

action, at the latest, within four years from the date of his act or omission in permitting the entry and finality of the August 12, 1974, judgment. She did not do so and is barred by the statute of limitations.[5]

Judgment affirmed.

**WIENER, J.**—I concur in the result on the sole ground that plaintiff cannot state a cause of action. The absence of legal clairvoyance is not the same as legal malpractice.

**STANIFORTH, J.**—I respectfully dissent.

## I

The sole issue presented by Mrs. Ruchti's appeal is the legal propriety of the trial court's sustaining of a general demurrer to Mr. Ruchti's second and third cause of action without leave to amend and consequent judgment of dismissal. The issues tended by the first and fourth causes of action are not before this court; they remain yet unresolved in the trial court.

This case comes to us after partial resolution at the pleading stage. We must therefore assume all the well pleaded allegations of counts two and three can be established if plaintiff is given her day in court. However, because the principal inquiry on this appeal is the propriety of the trial court's sustaining the demurrer without leave to amend, we must examine the facts in light of plaintiff's declaration or representation upon the premise the complaint is amendable to allege those facts. (*Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573, 577 [127 Cal.Rptr. 720]; *Miller* v. *R. K. A. Management Corp.* (1979) 99 Cal.App.3d 460, 463, fn. 1 [160 Cal.Rptr. 164].)

In counts two and three Ruchti alleged actual damage occurring at the time of the lawyer's negligent act, to wit, "Had [the lawyer] exercised proper care and skill in the foregoing matter, plaintiff would have been awarded at least a one-fourth interest in [defendant's] pension...."

However, Ruchti's opening brief states: "Appellant will not sustain any damage *until defendant Ruchti retires*." Thus the counts are

[5]The failure to discover facts may toll the running of the statute but the belated discovery of legal theories does not toll the statute (*McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 803 [159 Cal.Rptr. 86]).

amendable to allege the vesting of the military pension (Ruchti has now completed 20 years of service) but that the pension has not yet matured, for Ruchti is still in active military service. Until Mr. Ruchti's retirement, Mrs. Ruchti has not, will not, sustain any actual damages or injury. Only then would she, had her rights been protected, be entitled to receive her proportionate share of the pension.

Code of Civil Procedure section 340.6 provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. *In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist*:

"*(1) The plaintiff has not sustained actual injury;...*" (Italics added.)

The rule was firmly established in California that the lawyer's client cannot establish a cause of action for legal malpractice "until the client suffers *appreciable harm* as a consequence of his attorney's negligence...." (*Budd* v. *Nixon* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; see *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 184-187 [98 Cal.Rptr. 837, 491 P.2d 421], for review of the checkered legal history of the rule re accrual of legal malpractice causes of action.)

In *Budd*, the Supreme Court explained: "If the allegedly negligent conduct does not cause damage, *it generates no cause of action in tort.* [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. [Fn. omitted.] Prosser states the proposition succinctly, '*It follows* that the statute of limitations does *not begin to run against* a negligence action *until some damage* has occurred.' (Prosser, Law of Torts (4th ed. 1971) § 30 at p. 144.)

"The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] *Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.*

"Indeed, *once having discovered his attorney's negligence and having suffered some damage, the client must institute his action* within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct. [Citations.] Ordinarily, the client has already suffered damage when he discovers his attorney's negligence, as occurred in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, ante,* pages 183-187. . . *In other cases, the infliction of the damage will alert the client to the attorney's negligence and thus the statute of limitations will then begin to run on any malpractice action. Only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage.*" (6 Cal.3d pp. 200-201; italics added.)

In *Budd* v. *Nixen, supra,* Budd "suffered damage when. . .he was compelled to 'incur and pay attorney's fees and legal costs'" (6 Cal.3d p. 201) to correct the wrong accomplished by the lawyer's negligent acts.

The Supreme Court reversed a summary judgment, concluding: "We hold that a cause of action for legal malpractice does not accrue until the client suffers damage and that the determination of that date raises an issue of fact." (*Id.,* at p. 198.) The *Budd* case was governed by the two-year statute of limitation contained in Code of Civil Procedure section 339. The Legislature later adopted section 340.6 and changed the "appreciable and actual harm" rule but slightly. A *four-year* limitation period was tolled if the client "has not sustained *actual* injury." (Italics added.)

R. E. Mallen in *An Examination of a Statute of Limitations for Lawyers* (1978) 53 State Bar J. 166, 167, points out: "Both limitation periods of section 340.6 are tolled if a plaintiff has not sustained 'actual' injury. Intended to provide a more certain test of damages, the statute's use of 'actual' injury deviates both from the proposal's 'significant' injury standard and from the prior court-adopted criterion. In 1971, in *Budd* v. *Nixen* [*supra*], the California Supreme Court determined that the statute of limitations did not commence to run until the

client sustained 'any appreciable and actual' harm. *The inquiry concerned the extent rather than the fact of damage. Section 340.6 focuses instead on whether the plaintiff sustained any detectable damage.* As before, the plaintiffs assisted by this tolling provision will be primarily the beneficiaries of wills who may first be damaged years or decades after from the time of the attorney's negligence." (Italics added; fns. omitted.)

The recent case of *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798 [159 Cal.Rptr. 86], sheds further light on the critical statutory language. Mrs. McGee in 1976 sued the attorney who represented her in a *1963* divorce action. The claimed malpractice was a failure on the attorney's part to require the husband to maintain Mrs. McGee as irrevocable beneficiary on his life insurance policy. The husband died in 1973 *and* Mrs. McGee received no insurance proceeds. She did not bring suit until three years later (the two-year statute of limitations was then in effect). The Court of Appeal pointed to this fact. Mrs. McGee "knew that she had been damaged. She received no money from any insurance proceeds on [her] husband's death in 1973." (P. 802.) No similar *facts* show any damage to Mrs. Ruchti in these pleadings. Her legal conclusion of damage ("would have been awarded at least one-fourth interest in defendant's person") is pure speculation based upon a false assumption of law. Nor, according to her pleading, was she aware of her claim until consulting with her present attorney. Thus no well pleaded fact appears on the face of these pleadings that would trigger the running of the statute, either under the rule of *Budd* v. *Nixen, supra*, or Code of Civil Procedure section 340.6. Mrs. Ruchti's tender of facts would indicate a possible future harm, not present actual detectable damage as is required to generate a cause of action. (*Budd* v. *Nixen, supra*, 6 Cal.3d p. 200.) Such state of facts—if properly pleaded —would warrant dismissal *without* prejudice, but not with prejudice.

If, on the other hand, Mrs. Ruchti did sustain an actual detectable damage when she retained her present attorney (see *Budd* v. *Nixen, supra*, 6 Cal.3d pp. 201-202) thus triggering a cause of action for malpractice, then she should be allowed to amend her pleading to so allege.

## II

The majority opinion finds, as a matter of law, no cause of action pleaded by Mrs. Ruchti. The reasoning and conclusions tendered are di-

rectly contrary to the Supreme Court decision in *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 356-358 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].

Not "clairvoyance" but mere routine consultation of relevant authorities and case law was required of lawyers as early as 1967 to perceive that the general statutory presumption that all property acquired by either spouse during marriage belongs to the community "applies to retirement benefits." (*Id.*, at p. 357.)

Concerning the 1967 state of the law defining the community character of a federal military pension, the Supreme Court in *Smith* v. *Lewis, supra*, stated (pp. 357-358): "[S]ubstantial uncertainty may have existed in 1967 with regard to the community character of General Smith's *federal* pension. The above-discussed treatises reveal a debate which lingered among members of the legal community at that time concerning the point at which retirement benefits actually vest. [Fn. omitted.] [Citations.] Because the federal payments were contingent upon General Smith's survival to age 60, 17 years subsequent to the divorce, it could have been argued with some force that plaintiff and General Smith shared a mere expectancy interest in the future benefits. [Citations.] Alternatively, a reasonable contention could have been advanced in 1967 that federal retirement benefits were the personal entitlement of the employee spouse and were not subject to community division upon divorce in the absence of express congressional approval. In fact, such was the conclusion reached in 1973 by Judge B. Abbott Goldberg in his scholarly article *Is Armed Services Retired Pay Really Community Property?* (1973) 48 State Bar Journal 12. Although we rejected Judge Goldberg's analysis in *In re Marriage of Fithian* (1974) *supra*, 10 Cal.3d 592, 597, footnote, 2, the issue was clearly an arguable one upon which reasonable lawyers could differ. [Citation.]

"*Of course, the fact that in 1967 a reasonable argument could have been offered to support the characterization of General Smith's federal benefits as separate property does not indicate the trial court erred in submitting the issue of defendant's malpractice to the jury....*" (Italics added.)

The majority opinion here has determined as a matter of law Mrs. Ruchti had no cause of action for malpractice. *Smith* v. *Lewis, supra*, indicates it is not error to submit such issue to a jury. The growth of

law on the point since 1967 suggests that today it would be error not to submit this issue to the jury.

I would reverse the judgment of dismissal and remand with direction to grant leave to amend.

Appellant's petition for a hearing by the Supreme Court was denied February 18, 1981.