119 Cal.App.3d 883 (1981)
174 Cal. Rptr. 257
STELLA G. DAVIS, Plaintiff and Appellant,
v.
FRANK C. DAMRELL, SR., et al., Defendants and Respondents.
Docket No. 45603.
Court of Appeals of California, First District, Division One.
June 1, 1981.
*885 COUNSEL
Conklin, Davids & Friedman for Plaintiff and Appellant.
Long & Levit, Ronald E. Mallen and David W. Evans for Defendants and Respondents.
OPINION
RACANELLI, P.J.
Appellant challenges the summary judgment entered on her complaint for legal malpractice, contending that the issue of negligence concerning the implications of an unsettled proposition of law presented triable questions of fact. However, in light of the record and governing precedents, the contention is proven meritless. Accordingly, we affirm the judgment for the reasons which follow.
The record reveals the following salient facts and circumstances: In 1970 appellant retained respondent Frank C. Damrell, Sr.,[1] a former California superior court judge, to represent her in a dissolution proceeding. Appellant's husband, David K. McMillin, a career Army officer, then possessed a vested right to a federal pension upon retirement from active duty. In response to appellant's inquiry whether a community interest attached to her husband's federal military "retirement pay," respondent advised her that such federal military pension did not constitute divisible community property. A property settlement agreement subsequently executed by the parties contained no provision for the allocation or distribution of community property interests in the military pension. In 1973 Mr. McMillin retired from active duty and apparently has been receiving regular military pension payments ever since.
In 1974 the California Supreme Court determined that vested retirement benefits, including federal military pensions, constituted community property subject to equal division between the spouses in the *886 event of dissolution. (In re Marriage of Fithian (1974) 10 Cal.3d 592, 596 [111 Cal. Rptr. 369, 517 P.2d 449], cert. den. 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41].)
Respondent, who was admitted to the bar in 1935, had recently resumed the practice of law following his retirement after 15 years of judicial service. During that time, he had maintained a close familiarity with the developing law in the field of pension rights and benefits. His personal interest in this particular area, which predated his judicial service, led to his closely monitoring the leading decision of Wissner v. Wissner (1950) 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398] (establishing the supremacy of a federal statute governing disposition of the proceeds of a military service life insurance policy).[2]
Following the Supreme Court's clarification of the "error-in-judgment" rule to require the exercise of an informed judgment in order to avoid a charge of professional negligence (see Smith v. Lewis (1975) 13 Cal.3d 349 [118 Cal. Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231]), appellant instituted suit claiming, inter alia, that respondent's failure to advise her of the unsettled state of the relevant law deprived her of the opportunity to actively litigate and pursue such unsettled points of law and thus amounted to professional negligence. Appellant submitted the counterdeclaration of Lawrence W. Thorpe, an attorney experienced in domestic relations litigation, which stated in essence that respondent had failed to meet the minimum standards of professional practice by inaccurately advising appellant that the community property character of military retirement benefits was fully settled.

I
(1) It is well established that an attorney is liable for damages sustained by a client as a result of the negligent performance of his *887 professional duties. (See Kirsch v. Duryea (1978) 21 Cal.3d 303, 308 [146 Cal. Rptr. 218, 578 P.2d 935]; Ishmael v. Millington (1966) 241 Cal. App.2d 520, 525-526 [50 Cal. Rptr. 592]; see also Neel v. Magana, Olney, Levy, Cathcart, and Gelfand (1971) 6 Cal.3d 176, 180-181 [98 Cal. Rptr. 837, 491 P.2d 421].) (2) When the challenged conduct or omission relates to matters not within the common knowledge of a layman, the question of professional negligence will generally require expert testimony for appropriate factual resolution. (Lysick v. Walcom (1968) 258 Cal. App.2d 136, 156 [65 Cal. Rptr. 406, 28 A.L.R.3d 368]; 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 143, p. 154.) (3) But it is equally settled that no liability will attach "`for lack of knowledge as to the true state of the law where a doubtful or debatable point is involved.'" (Sprague v. Morgan (1960) 185 Cal. App.2d 519, 523 [8 Cal. Rptr. 347]; accord Smith v. Lewis, supra, 13 Cal.3d 349, 358-359; see generally 1 Witkin, op. cit., §§ 150-152, pp. 161-164; Annot. (1977) 78 A.L.R.3d 255.) In reaffirming the long-established principle immunizing the legal practitioner from liability resulting from an honest error in judgment concerning a doubtful or debatable point of law, the California Supreme Court imposed the added condition that reasonable legal research be first undertaken "in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem." (Smith v. Lewis, supra, 13 Cal.3d 349, 359.) Thus, the controlling test invokes a two-pronged inquiry: (1) whether the state of the law was unsettled at the time the professional advice was rendered; (2) and whether that advice was based upon the exercise of an informed judgment. We believe both inquiries must be answered affirmatively herein.
At the time of the challenged conduct substantial uncertainty existed relating to the community character of federal pension benefits, provoking considerable debate concerning the nature and vesting of federal retirement benefits as well as questions of federal supremacy. (See Smith v. Lewis, supra, 13 Cal.3d at p. 357, and authorities there cited.) It was not until the 1974 Fithian decision that vested military retirement benefits were authoritatively determined to be subject to California community property law.[3] Indeed, no sooner had the jurisprudential *888 dust settled than the court forthrightly repudiated its earlier language excluding nonvested pension rights from community property treatment. (In re Marriage of Brown, supra, 15 Cal.3d 838, 851, fn. 14, disapproving contrary statements in a number of decisions including In re Marriage of Jones (1975) 13 Cal.3d 457 [119 Cal. Rptr. 108, 531 P.2d 420]; Smith v. Lewis, supra, 13 Cal.3d 349; In re Marriage of Fithian, supra, 10 Cal.3d 592.) Of course, those subsequent decisions are temporarlly irrelevant to the question to be decided herein relating to the state of the relevant law in 1970 which  as previously noted  postured clearly arguable issues "upon which reasonable lawyers could differ." (Smith v. Lewis, supra, at p. 357; accord Henn v. Henn (1980) 26 Cal.3d 323, 328 [161 Cal. Rptr. 502, 605 P.2d 10].) Thus, we conclude as a matter of law, the subject of the community character of vested military retirement benefits inherently involved an unsettled point of law; accordingly, respondent's failure to anticipate its future resolution  characterized in a recent decision as a "180° shift in the law" (Ruchti v. Goldfein (1980) 113 Cal. App.3d 928, 934 [170 Cal. Rptr. 375])  cannot serve as the basis for professional negligence by reason of an erroneous but otherwise informed judgment.
Unlike the factual record disclosed in Smith supporting a theory of actionable negligence, the record indisputably demonstrates respondent's continuing legal research and knowledgeable familiarity with the state of existing law pertinent to the community property aspect of federal retirement benefits. In sharp contrast with Mrs. Smith's counsel, respondent was fully aware of the then controlling precedents and relevant literature,[4] supplemented by a wealth of judicial experience in numerous domestic relations matters involving a variety of retirement benefits issues. Based upon the sum of that legal knowledge and practical experience, respondent rendered his now questioned opinion that a federal military pension was not subject to division under community property law. While in hindsight that professional advice ultimately proved erroneous, nonetheless it represented a reasoned exercise of an informed judgment grounded upon a professional evaluation of applicable legal principles. Under such uncontroverted circumstances, respondent's *889 error in judgment on a question of law is immune from a claim of professional negligence. (Kirsch v. Duryea, supra, 21 Cal.3d 303, 308; Smith v. Lewis, supra, at pp. 358-359; Sprague v. Morgan, supra, 185 Cal. App.2d 519, 523.)

II
We reject appellant's further contention that given the unsettled state of the law at the time the advice was rendered, respondent was under a duty to so advise his client in order to permit an informed choice whether to litigate the claim at trial and on appeal. While we recognize that an attorney owes a basic obligation to provide sound advice in furtherance of a client's best interests (see ABA Code of Prof. Responsibility, canon 7, EC 7-7, 7-8), such obligation does not include a duty to advise on all possible alternatives no matter how remote or tenuous. To impose such an extraordinary duty would effectively undermine the attorney-client relationship and vitiate the salutary purpose of the error-in-judgment rule. As a matter of policy, an attorney should not be required to compromise or attenuate an otherwise sound exercise of informed judgment with added advice concerning the unsettled nature of relevant legal principles. Under the venerable error-in-judgment rule, if an attorney acting in good faith exercises an honest and informed discretion in providing professional advice, the failure to anticipate correctly the resolution of an unsettled legal principle does not constitute culpable conduct. To require the attorney to further advise a client of the uncertainty in the law would render the exercise of such professional judgment meaningless. "The fact that greater prudence might have caused him to initiate what he believed to be a futile [appeal] ... cannot, in lieu of a showing that he should have known it to be otherwise, now cause him to be subjected to a judgment of malpractice." (Sprague v. Morgan, supra, 185 Cal. App.2d 519, 523.) In short, the exercise of sound professional judgment rests upon considerations of legal perception and not prescience.
In conclusion, we find no error in the judgment below.[5]
*890 Judgment affirmed.
Newsom, J., and Grodin, J., concurred.
NOTES
[1] Since the interest of respondents as law partners appear identical, we confine our discussion to the issues involving respondent Frank C. Damrell, Sr., during the underlying professional relationship.
[2] In a supporting declaration respondent traced his familiarity with a line of cases following the earlier French rule (French v. French (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366] [holding that a nonvested military pension was a mere expectancy not subject to division as community property], overruled in In re Marriage of Brown (1976) 15 Cal.3d 838 [126 Cal. Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]). His special interest in the Wissner litigation (due in part to his long acquaintanceship with the Wissner family) motivated him to follow the progress of that litigation from its inception in the same court in which he was to eventually serve, including frequent discussions of a professional nature with the respective attorneys involved in the litigation.
[3] Fithian's reasoning that the Wissner supremacy doctrine did not preempt state law requiring equitable division of community property was reaffirmed later that same year (see In re Marriage of Milhan (1974) 13 Cal.3d 129, 132 [117 Cal. Rptr. 809, 528 P.2d 1145] [Milhan I], cert. den. 421 U.S. 976 [44 L.Ed.2d 467, 955 S.Ct. 1976]); a similar conclusion was reached on a subsequent appeal grounded upon the supremacy clause (see Hisquierdo v. Hisquierdo (1979) 439 U.S. 572 [59 L.Ed.2d 1, 98 S.Ct. 802] [Federal Railroad Retirement Act of 1974]) related to community interests in federal disability and retirement benefits (see In re Marriage of Milhan (1980) 27 Cal.3d 765 [166 Cal. Rptr. 533, 613 P.2d 812] [Milhan II], cert. applied for docket No. 80-578).
[4] Respondent's commitment to ongoing research included his review of the commentators' debate on the question of vesting expressly alluded to in Smith v. Lewis, supra, 13 Cal.3d at p. 357.
[5] The record is unclear whether the pension benefits remain unadjudicated under the terms of the decree, thus arguably supporting a claim of tenancy in common. (Henn v. Henn, supra, 26 Cal.3d 323, 330; In re Marriage of Brown, supra, 15 Cal.3d 838, 850-851.) That issue received limited discussion by way of supplemental letter-briefing; since it was neither raised nor argued below, it is not subject to review. Accordingly, we express no opinion as to whether such remedy is now available to appellant.